# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-KA-00845-SCT

*STEADMAN DAVIS a/k/a STEADMAN ALLEN DAVIS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/12/2008 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MISSISSIPPI OFFICE OF INDIGENT APPEALS BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JOHN R. HENRY, JR. |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED IN PART AND REVERSED AND REMANDED IN PART - 10/08/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLSON, P.J., DICKINSON AND PIERCE, JJ.**

**CARLSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Steadman Davis was convicted by a jury of motor-vehicle theft[1] and felony possession

of a firearm[2] in the Circuit Court of the First Judicial District of Hinds County.  Davis was

---

[1]*See* Miss. Code Ann. § 97-17-42(1) (Rev. 2006).

[2]Steadman Davis has a prior felony conviction for conspiracy to sell cocaine. Mississippi Code Section 97-37-5 (Rev. 2006) provides, *inter alia*, that "[i]t shall be unlawful for any person who has been convicted of a felony . . . to possess any firearm."

sentenced to consecutive sentences of five years for the motor-vehicle-theft conviction and three years for the firearm-possession conviction. In today's appeal, Davis asserts that he was denied crucial jury instructions and that the convictions should be reversed based on the lack of evidence supporting the jury verdicts of guilty. Finding error as to the motor-vehicle-theft conviction, we affirm in part and reverse in part, and remand for a new trial on the charge of motor-vehicle theft.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2. On May 21, 2006, the Jackson Police Department received a domestic-disturbance call and was dispatched to 233 Redwood Avenue to a house owned by Laquita Simpson. Upon arrival, the responding officer learned that gunfire had been exchanged between Deborah Wright (Simpson's mother) and Wright's ex-boyfriend, Steadman Davis.

¶3. Wright and Davis had dated and lived together at Wright's home (214 Queen Anne Lane) for several months prior to the events which generated today's appeal. Earlier in May, an incident had been reported in which there had been a physical fight between Wright and Davis, which resulted in Wright moving out of her home to live with her daughter, Laquita Simpson, leaving Davis in Wright's home. Davis claimed that, although he continued to live at the Queen Anne Lane house, he was in the process of moving out. Davis alleged that, after the earlier fight between Wright and Davis, Wright's relatives began to threaten him. On the other hand, Wright alleged that after she moved out, Davis began to make harassing telephone calls to her and threatened to harm her and/or members of her family. Wright

2

further asserted that Davis drove past her daughter's house at least twice daily while she was staying there.

¶4. Not surprisingly, the events of May 21, 2006, are hotly disputed. Davis claimed that he was tricked into going to Simpson's house and, once there, was ambushed. Wright, however, claimed that Davis threatened her and kidnapped her brother, Cornelius Wells, eventually bringing her brother to Simpson's house where a shoot-out occurred.

¶5. Davis alleged that he was at the Queen Anne Lane house, gathering some of his clothing, when Wells arrived at the house. According to Davis, when Wells arrived, Davis was on his cell phone talking with Irene Shepard, a Hinds County deputy sheriff whose car Davis had borrowed to go to the house and get his belongings. Davis stated that, due to the fact that he was being harassed by Wright's family, he was scared that Wells might harm him, so he asked Deputy Shepard to remain on the other end of the call.[3]

¶6. According to Davis, Wells told him that he wanted the dispute between Davis and Wright's family to be resolved and asked him to get in Wells's vehicle with him, so they could drive to Simpson's house and get everything cleared up. According to Davis, Wells then drove Davis to Simpson's house. Davis claimed that just before they arrived at Simpson's house, Wells told him that he (Davis) might get hurt because of what was going on and that nothing would happen to anyone who hurt him. Davis also claimed that, at this point, he realized he was in trouble.

---

[3]Deputy Shepard corroborated Davis's story in her trial testimony.

¶7. Davis stated he was about to jump out of the vehicle, but they had already arrived at Simpson's house. He claimed that when they arrived, Wells jumped out of the vehicle and ran to hide behind a tree while shouting "Shoot him!" Deputy Shepard, whose call was still connected on Davis's cell phone, claimed that she heard someone yell "Kill him," and then what sounded like firecrackers, though she suspected it was gunfire. Davis claimed that after Wells jumped out of the vehicle, Wright appeared on the porch. Davis stated he was out of the vehicle and beginning to run when Wright fired a gun, shooting him in the left buttock. Davis then fired three shots toward the house, allegedly for "cover" so that he could run around to the driver's side of Wells's vehicle. Davis then got into Wells's vehicle and drove off, claiming that he had no choice; he could either take Wells's vehicle and leave or stay and get shot. Since he was not familiar with the neighborhood, Davis accidentally drove to a dead-end street. He stopped there and put some tissue in his wound, then used Wells's cell phone to call Deputy Shepard. He told her what had happened but asked her not to call the police.

¶8. In order to get out of the neighborhood, Davis got back into the vehicle and drove back the way he had previously driven. He claimed that as he drove past Simpson's house, he saw people running, but he did not see a police car. Davis did not stop, but continued to drive with the intention of going to his cousin's house to be taken to the hospital. However, between fleeing the scene and going to his cousin's house, Davis stopped by Deputy Shepard's house to return the key to her car. Deputy Shepard stated Davis told her that he

4

had been shot and that he had to go. Davis claimed that he was on his way to his cousin's house when he was apprehended by police.

¶9. According to Wright, on May 21, 2006, her brother, Cornelius Wells, called to ask if he could put some fish in her freezer. She told him she did not care, so he went to her house on Queen Anne Lane. About thirty minutes later, Wells called to say he had been kidnapped by Davis. According to Wells, when he arrived at the house on Queen Anne Lane, Davis was sitting on the couch in his boxer shorts. Wells claimed that as he attempted to leave, he passed by Davis again and Davis was putting on his clothes. Wells said that, at this point, Davis pulled a gun on him and told him that if he did not take him to Wright he would kill him. Wells then used his cell phone to call Wright to tell her that Davis had him, and that Davis was demanding that she meet him on Flag Chapel Road. Wells said that if she refused, Davis was going to kill him. Wright hung up the phone. Wells claimed that Davis then held the gun to his head and forced him to drive to where Wright was – Simpson's house on Redwood Avenue. Davis then allegedly forced Wells to call Wright again and inform her that if she called the police, he would kill Wells. Wright hung up again and called 911.

¶10. Wright claimed that she and her daughter and grandchildren were in the front bedroom, waiting for the police to arrive, when she looked out the bedroom window and observed Wells's truck pull into the driveway, with Wells in the driver's seat and Davis in the passenger seat. She further observed Wells jumping out of the truck and running for cover, yelling "Call the police!" Wright claimed that Davis then got out of the truck and

5

came up on the porch of the house while firing into the house. Wright stated that Simpson and her children ran to another part of the house for safety, while Wright took cover behind a dresser in the front room. She claimed that Davis came into the house and fired a number of shots[4] at her inside the bedroom. Wright then drew her own gun, which she had received from her daughter while she was talking to the 911 operator, and fired at Davis, shooting him in the buttock. Wright stated that her gun jammed and she was not able to shoot Davis again. Wright claimed that at this point Davis ran out of the house, jumped into Wells's truck, and drove off, moments before the police arrived.

¶11. Carolyn Kirkland was the responding officer, and she testified that when she arrived, she noticed a bullet hole in the front door and Davis driving past the house. Kirkland had been informed that Davis was armed, so she and the other officers ducked and ran for cover when he drove by. Wright informed Officer Kirkland that Davis had been there moments before and had "shot up in the house." Kirkland testified that she noticed a number[5] of bullet holes in the door and walls of the house.

¶12. Vladimir Hill, the officer who arrested Davis, testified that he did not find a weapon in the vehicle or on Davis's person, and that Davis had been shot in the buttock. Davis was indicted for kidnapping, shooting into an occupied dwelling, motor-vehicle theft, and being

---

[4]Wright could not remember the exact number of shots Davis fired, but she claimed it was more than three.

[5]At one point in her testimony, Kirkland stated there were three holes, however, later she said there were four. There was never any clarification as to whether she saw three or four bullet holes.

a convicted felon in possession of a firearm. At trial, after hearing testimony from witnesses for the State and the defendant, the jury found Davis not guilty of kidnapping and not guilty of shooting into an occupied dwelling; however, the jury found Davis guilty of motor-vehicle theft and of being a convicted felon in possession of a firearm. Davis now appeals to this Court from these two convictions.

## DISCUSSION

¶13. Davis asserts that the trial court erroneously denied him crucial jury instructions and that the evidence did not support the guilty verdicts.

### I. WHETHER DAVIS WAS DENIED CRUCIAL JURY INSTRUCTIONS.

¶14. The standard of review when appellate courts consider issues involving jury instructions is well-established. Jury instructions must be read as a whole to determine if the instructions were proper. *Milano v. State*, 790 So. 2d 179, 184 (Miss. 2000). Jury instructions must fairly announce the law of the case and not create an injustice against the defendant. *Id*. This rule is summed up as follows: "In other words, if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results." *Id*. *See Adams v. State*, 772 So. 2d 1010, 1016 (Miss. 2000).

¶15. A defendant has a right to jury instructions that present his theory of the case, but that right is not absolute. "The court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions or is without foundation in the evidence." *Phillipson v. State,* 943 So. 2d 670, 671 (Miss. 2006). Also, jury instructions are within the

discretion of the trial court. *Higgins v. State,* 725 So. 2d 220, 223 (Miss. 1998). Finally, when serious doubt exists as to whether an instruction should be included, the doubt should be resolved in favor of the accused. *Stringfellow v. State,* 595 So. 2d 1320, 1322 (Miss. 1992).

¶16.    Davis contends that the outcome of his trial was negatively affected because the trial judge refused to give crucial jury instructions. He claims that, had the jury been properly instructed, he would not have been convicted. The jury instructions in question are D-9,[6]

---

[6]Jury Instruction Number D-9 stated:

Evidence has been presented that the defendant acted under duress in committing the crime.

"Duress" is the exercise of unlawful force upon a person whereby that person is compelled to do some act that he otherwise would not have done. In order for duress to be a defense to a criminal charge, the impelling danger must be present, imminent, and impending, and of such nature as to induce in that person a well-grounded apprehension of death or seriously bodily harm if the act is not done. A person having a reasonable opportunity to avoid committing the crime without undue exposure to death or serious bodily harm cannot invoke duress as a defense.

If the State has failed to prove from the evidence in this case beyond a reasonable doubt that the defendant acted voluntarily in committing the crime and not under duress, then you shall find the defendant not guilty.

which included an instruction on the defense of duress for the convicted-felon-in-possession-of-firearm charge, and D-11,[7] which included an instruction on the defense of necessity for the motor-vehicle-theft charge.

¶17.    The trial court was correct in denying Instruction D-9, the instruction on the defense of duress for the convicted-felon-in-possession-of-firearm charge. Under our statute, it is illegal for a convicted felon to have possession of a firearm in the state of Mississippi. Miss. Code Ann. § 97-37-5 (Rev. 2006).[8]  All the evidence, including Davis's own testimony,

---

[7]Jury Instruction Number D-11 stated:

Evidence has been presented that the defendant acted under necessity in committing the crime.

In order for necessity to be a defense to a criminal charge, the defendant must prove the following:

1. The act charged was done to prevent a significant evil,
2. There was no adequate alternative, and
3. The harm caused was not disproportionate to the harm avoided.

If the State has failed to prove from the evidence in this case beyond a reasonable doubt that the defendant acted voluntarily in committing the crime and/or defendant prove the above elements of necessity, then you shall find the defendant not guilty.

[8] The text of Section 97-37-5(1) reads:

(1) It shall be unlawful for any person who has been convicted of a felony under the laws of this state, any other state, or of the United States to possess any *firearm* or any bowie knife, dirk knife, butcher knife, switchblade knife, metallic knuckles, blackjack, or any muffler or silencer for any firearm unless such person has received a pardon for such felony, has received a relief from disability pursuant to Section 925(c) of Title 18 of the United States Code, or has received a certificate of rehabilitation pursuant to subsection (3) of this

proves that Davis was in possession of the firearm before the events occurred. Davis contends that the reason he had the gun in the first place was because he was being threatened by Wright's family, thus necessitating a duress instruction. For duress to be an affirmative defense, four requirements must be met. The impending danger must be "present, imminent and impending, and not to be avoided." *Ruffin v. State*, 992 So. 2d 1165, 1178 (Miss. 2008). According to the United States Supreme Court, if there is a reasonable and legal alternative to violating the law, it must be used. Also, if there is a chance to avoid the threatened harm and refuse to do the criminal act, the defense of duress will fail. *United States v. Bailey*, 444 U.S. 394, 410, 100 S. Ct. 624, 62 L. Ed. 2d 575 (1980).

¶18. Davis does not meet the four duress requirements. The danger was not present, imminent and impending, and not to be avoided. Davis admittedly had been threatened, but since the threat, Davis had not been physically harmed. He could have avoided the situation altogether by staying away from Wright, her property, and her family. Therefore, the evidence did not support giving a duress instruction to the jury. Nor did the refusal of the judge to give the duress instruction create an injustice to the defendant. Since the duress instruction was not supported by the evidence, the trial judge correctly denied the jury instruction on duress for the felony-possession-of-a-firearm charge, and this assignment of error is thus without merit.

---

    section.

Miss. Code Ann. § 97-37-5(1) (Rev. 2006) (emphasis added).

¶19. However, the trial court erred in denying Jury Instruction No. D-11, the necessity instruction for the motor-vehicle-theft charge. The defense of necessity is "available where the defendant reasonably acts out of fear of 'imminent danger of death or serious bodily harm' to others." *Stodghill v. State,* 892 So. 2d 236, 238 (Miss. 2005) (citation omitted). The three components to the defense of necessity are (1) the act charged was done to prevent a significant evil, (2) there was no adequate alternative, and (3) the harm caused was not disproportionate to the harm avoided. *Id.*

¶20. The trial judge denied this instruction due to its wording and a lack of evidence to support it. Thus, any attempt by counsel to correct it would have been futile. There is, however, ample evidence that could show Davis took Wells's vehicle for the sole purpose of fleeing from the scene of the shootout. Davis testified that he took the vehicle because he felt it was the only option for him to successfully leave the scene and not be shot again. Based on the record in this case, a properly instructed jury reasonably could have found that taking the vehicle was a reasonable action under these circumstances. "Where a person reasonably believes that he is in danger of physical harm, he may be excused for some conduct which ordinarily would be criminal." *Knight v. State*, 601 So. 2d 403, 405 (Miss. 1992). Again, if the jury believed Davis's testimony that he had felt he was in danger of physical harm if he did not flee the scene, then a properly instructed jury could have found that Davis's belief that he was in danger of physical harm was a reasonable one, considering the fact that he already had been shot once.

¶21. While there appears to be little doubt that the proposed instruction was indeed worded incorrectly, the law presented in the proposed instruction was supported by the evidence. Therefore, the judge should have taken affirmative action to cure the error or to inform counsel how to cure the faulty instruction. It is the duty of the trial judge to make sure that the jury has been properly informed about the applicable law. *Duvall v. State,* 634 So. 2d 524, 526 (Miss. 1994). *See also Kolberg v. State*, 829 So. 2d 29, 45 (Miss. 2002) ("There is no doubt that the trial court is ultimately responsible for rendering proper guidance to the jury via appropriately given jury instructions, even *sua sponte.*"). The defense of necessity was supported by the evidence and was not mentioned anywhere else in the jury instructions. Because it was not addressed in jury instructions, the defendant suffered an injustice. The trial court is given considerable discretion when dealing with an issue of a refused jury instruction on appeal, and the "primary concern on appeal is that 'the jury was fairly instructed and that each party's proof-grounded theory of the case was placed before it.'" *Cohen v. State*, 732 So. 2d 867, 872 (Miss. 1998) (citations omitted). The denial of this instruction prevented Davis's "proof-grounded theory of the case" from being presented.

¶22. In some circumstances, the trial court's refusal of a similar instruction would constitute harmless error; however, that is not true in the present case. "Harmless errors are those which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." *Williams v. State,* 991 So. 2d 593, 599 (Miss. 2008). The failure of the trial judge in this case to instruct the jury on the defense of necessity was

12

not harmless error and could have been the difference between Davis being found guilty of the crime of motor-vehicle theft, or not; thus denying Davis his right to a fair trial. Therefore, Davis's conviction and sentence for motor-vehicle theft are reversed and remanded for a new trial.

## II. WHETHER THE GUILTY VERDICTS WERE BASED ON INSUFFICIENT EVIDENCE AND/OR WERE CONTRARY TO LAW OR THE WEIGHT OF THE EVIDENCE.

¶23. The trial judge denied Davis's motion for a judgment notwithstanding the verdict, or in the alternative, for a new trial. An appellate court is not allowed to discharge a defendant who has been found guilty by a jury unless "given the evidence, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty." *May v. State*, 460 So. 2d 778, 781 (Miss. 1984). "[R]eview of the sufficiency of the evidence is adequate protection from jury error or irrationality." *Curry v. State,* 939 So. 2d 785, 791 (Miss. 2006) (citing *Holloman v. State*, 656 So. 2d 1134, 1141 (Miss. 1995)). Therefore, as long as the evidence is sufficient to support the jury's verdict of guilty, a conviction cannot be overturned on insufficiency of the evidence. *Id.* This Court must decide whether "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *Curry*, 939 So. 2d at 791. *See also Bush v. State*, 895 So. 2d 836, 843-44 (Miss. 2005).

¶24. Allowing the conviction for convicted-felon-in-possession-of-firearm charge to stand will not be prejudicial to the defendant. All the evidence pointed to Davis, a prior convicted

felon, being in possession of a firearm while not under duress, a conclusion that could be reached by any rational juror. Based on this Court's standard of review for this issue, the evidence is legally sufficient and supports the affirmance of the guilty verdict for felony possession of a firearm.

¶25. The evidence also is legally sufficient to support the motor-vehicle-theft conviction. While it could appear to be inconsistent for the jury to find Davis not guilty of kidnapping, but guilty of motor-vehicle theft, this is without consequence.[9] This Court has stated:

> Inconsistent verdicts present a situation where "error," in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored. Given this uncertainty, and the fact that the [prosecution] is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course.

*Curry*, 939 So. 2d at 791 (quoting *United States v. Powell*, 469 U.S. 57, 65 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984)).

¶26. In determining whether a jury verdict is supported by sufficient evidence to show the defendant's guilt beyond reasonable doubt, the appellate court must accept as true all evidence presented that supports the verdict. *Eakes v. State*, 665 So. 2d 852, 872 (Miss. 1995). A jury verdict will be reversed only when the evidence is such that a reasonable and

---

[9]On the other hand, based on today's record, the jury reasonably could have found that Davis was not guilty of kidnapping Wells, and that Davis did not "steal" Wells's vehicle to travel from the house on Queen Anne Lane to Simpson's house on Redwood Avenue, but that Davis was guilty of the theft of Wells's vehicle when leaving Simpson's house. The problem with Davis's motor-vehicle-theft conviction is not the sufficiency or the weight of the evidence, but instead the failure to properly instruct the jury on the defense of necessity, thus requiring a new trial on this charge.

fair-minded juror could find the accused only not guilty. *Harveston v. State,* 493 So. 2d 365, 370 (Miss. 1986). Since there is conflicting testimony in this case, reasonable and fairminded jurors in the exercise of impartial judgment could reach different conclusions as to the verdict, thus resulting in our finding that there was legally sufficient evidence to convict Davis of motor-vehicle theft.

¶27. Likewise, as to the weight of the evidence, based on the evidence before the Court, as set out above, it is clear that the verdicts were not so contrary to the overwhelming weight of the evidence that to allow them to stand would amount to the sanctioning of an unconscionable injustice. *Nelson v. State*, 10 So. 3d 898, 908 (Miss. 2009) (citing *Jones v. State*, 904 So. 2d 149, 154 (Miss. 2005)). *See also Bush*, 895 So. 2d at 844-45. This issue is without merit.

## CONCLUSION

¶28. For the reasons stated, the Hinds County Circuit Court judgment of conviction and sentence for motor-vehicle theft (Count III) is reversed and this case is remanded to the Circuit Court for the First Judicial District of Hinds County for a new trial consistent with this opinion. The Hinds County Circuit Court judgment of conviction for convicted-felon-in-possession-of-firearm (Count IV) and Steadman Davis's sentence of three years imprisonment in the custody of the Mississippi Department of Corrections are affimed.

¶29. **COUNT III: REVERSED AND REMANDED. COUNT IV: CONVICTION OF CONVICTED FELON IN POSSESSION OF A FIREARM AND SENTENCE OF THREE (3) YEARS IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. APPELLANT IS CREDITED FOR TIME SERVED.**

15

**WALLER, C.J., GRAVES, P.J., DICKINSON, RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR.**