LEE, C.J.,
 

 for the Court:
 

 PROCEDURAL HISTORY
 

 ¶ 1. Justin Thomas was found guilty in the DeSoto County Circuit Court of manslaughter. He was sentenced to serve fifteen years in the custody of the Mississippi Department of Corrections followed by five years of post-release supervision and ordered to pay a $5,000 fine. Thomas filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. His motion was denied by the trial court.
 

 ¶ 2. Thomas now appeals, asserting the following issues: (1) the denial of jury instruction D-12 regarding the Castle Doctrine hindered his right to a fair trial, and (2) the verdict is against the overwhelming weight of the evidence. As we find reversible error in regard to issue one, issue two will not be discussed.
 

 FACTS
 

 ¶ 3. On March 8, 2008, a fundraising party was being held at the Performing Arts Building in Southaven, Mississippi. After the party, a crowd gathered in the parking lot and a fist fight ensued. Security attempted to stop the fight but could not. Thomas shot a gun in the air, and the attack stopped. The State and defense each called several witnesses who were in the parking lot on the night of the shooting to testify as to the events that followed. Thomas chose not to testify at trial.
 

 ¶ 4. Kenetric Randolph testified for the State. He had attended the party and witnessed Thomas shoot a gun in the air during the fight in the parking lot. Randolph testified that he thought Thomas was shooting at him or the young men standing with him. Randolph testified that Thomas immediately ran and got into his car. Randolph and several other men ran after Thomas and tried to open Thomas’s car doors, but Thomas had locked the doors. Randolph testified that Thomas began to reload his gun, and Randolph and the other men ran to the back of the ear. He testified no one was in front of the car. Dexter Harris was to Randolph’s left at the rear of the car. Randolph testified that he then threw a cell phone at the car in an attempt to break the back window. Thomas then rolled down the driver’s side window and fired several shots from his
 
 *1114
 
 car. Two of the shots hit Harris in the chest and thigh. Harris subsequently died from his wounds. Thomas then drove off. Randolph testified that Thomas could have fled in the car at any time as nothing was blocking the car’s path.
 

 ¶ 5. Antonio Jasper testified for the State. He saw Thomas shoot the gun in the air and then the crowd rush toward Thomas’s car. He stated that the people who knew Thomas chased him because they wanted to ask him why he had shot the gun. These people were knocking on the car windows and beating on the trunk. He also went to Thomas’s car. He stated that security was by Thomas’s car asking everyone to leave since Thomas was armed. He did not see anyone standing in front of Thomas’s car blocking him from leaving. Jasper testified that he went back to his car when security told him that the police were on the way. Jasper did not see Thomas shoot Harris.
 

 ¶ 6. Justin Buckner testified for the defense. Buckner was attacked in the parking lot of the Performing Arts Building after the party. He stated that he was standing outside after the party waiting on his ride when a group called “TNT” starting hitting and kicking him. Harris was in the group. He was relieved when Thomas shot the gun because he thought the men would have beaten him to death if it had been allowed to continue.
 

 ¶ 7. Grady Green testified for the defense. He testified that he and another friend were asked to work as security for the party. He testified that a total of four men worked as security. He was asked to help because he was a friend of the party planner. He was not a trained security guard. He testified that he tried to break up the crowd in the parking lot after the party, but he was unsuccessful. He recognized the crowd as a group called TNT. He estimated there were eighteen to twenty people in the group that jumped Buckner. He testified that Buckner did not do anything to provoke the attack. Green attempted to pull the men off Buckner, but he was unsuccessful. After Thomas had shot into the air, the crowd dispersed, and Green helped Buckner inside the building. Green testified that he was grateful that Thomas had shot the gun because he feared serious harm to Buckner. Green testified that more than ten men rushed Thomas’s car and surrounded it.
 

 ¶ 8. Quintarus Robinson also served as security for the party. Robinson was not a trained security guard, but he tried to stop the attack on Buckner. He testified that the only reason the attack stopped was because Thomas had fired a gun in the air. He testified that he was relieved when Thomas shot the gun because the attempts to make the men stop attacking Buckner had failed. He thought that even calling the police would have taken too long. Robinson testified that after the shots were fired, the crowd ran, and he and Green helped Buckner inside the building. Robinson testified that he stayed outside and watched the crowd surround Thomas’s car to the point where Robinson could barely see the car. He estimated the crowd to be twenty to thirty people. Robinson stated that the men were trying to open the car doors, hitting and kicking the car, and throwing things at the windows. He testified that a red car was blocking Thomas’s car. He stated that Thomas “couldn’t just really just turn around like he wanted to, but there was a little space.”
 

 STANDARD OF REVIEW
 

 ¶ 9. “It is well settled that jury instructions generally are within the discretion of the trial court, so the standard of review for the denial of jury instructions is abuse of discretion.”
 
 Newell v. State,
 
 49
 
 *1115
 
 So.3d 66, 78 (¶ 20) (Miss.2010). “[T]he instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.”
 
 Id.
 
 (quoting
 
 Rubenstein v.
 
 State, 941 So.2d 735, 785 (¶ 224) (Miss. 2006)). Further, “a defendant is entitled to have every legal defense he asserts to be submitted as a factual issue for determination by the jury under proper instruction of the court.”
 
 Giles v. State,
 
 650 So.2d 846, 849 (Miss.1995).
 

 DISCUSSION
 

 ¶ 10. Thomas argues that the trial court erred in refusing jury instruction D-12, which states:
 

 The killing of Dexter Harris by the act, procurement or omission of Justin Van-ques Thomas, shall be justifiable if committed by Justin Thomas in resisting any attempt unlawfully to kill Justin Thomas or to commit any felony upon Justin Thomas, or upon any dwelling, in any occupied vehicle, in any place of business, in any place of employment or in the immediate premises thereof in which Justin Thomas was found.
 

 ¶ 11. This instruction tracks the language of Mississippi Code Annotated section 97-3-15(3) (Rev.2006), also known as the “Castle Doctrine”:
 

 A person who uses defensive force shall be presumed to have reasonably feared imminent death or great bodily harm, or the commission of a felony upon him or another or upon his dwelling, or against a vehicle which he was occupying, or against his business or place of employment or the immediate premises of such business or place of employment, if the person against whom the defensive force was used, was in the process of unlawfully and forcibly entering, or had unlawfully and forcibly entered, a dwelling, occupied vehicle, business, place of employment or the immediate premises thereof or if that person had unlawfully removed or was attempting to unlawfully remove another against the other person’s will from that dwelling, occupied vehicle, business, place of employment or the immediate premises thereof and the person who used defensive force knew or had reason to believe that the forcible entry or unlawful and forcible act was occurring or had occurred. This presumption shall not apply if the person against whom defensive force was used has a right to be in or is a lawful resident or owner of the dwelling, vehicle, business, place of employment or the immediate premises thereof or is the lawful resident or owner of the dwelling, vehicle, business, place of employment or the immediate premises thereof or if the person who uses defensive force is engaged in unlawful activity....
 

 ¶ 12. The trial court found the instruction was not warranted for two reasons: (1) Thomas retreated to his vehicle after firing a weapon on someone else’s property, and (2) the trial judge thought Thomas’s defense was covered by the self-defense jury instruction. Thomas argues that the trial judge abused his discretion in denying this instruction because it hindered his ability to present his defense.
 

 ¶ 13. In order to find that jury instruction D-12 should have been given, we must first find that it had a factual basis in the evidence. To allege a factual basis under the Castle Doctrine, proof of the following two prongs from section 97-3-15 must be presented:
 

 First, under subsection (4), if the defendant is in a place where he had a right to be, is not the immediate provoker and aggressor, and is not engaged in unlawful activity, he has no duty to retreat before using defensive force. Miss.Code
 
 *1116
 
 Ann. § 97-3-15(4) (Rev.2006). And second, if the jury finds that any of the circumstances in subsection (3) are satisfied, the defendant who uses such defensive force is presumed to have reasonably feared imminent death or great bodily harm or the commission of a felony upon him. Miss.Code Ann. § 97-3-15(3) (Rev.2006).
 

 Newell,
 
 49 So.3d at 74 (¶ 22).
 

 ¶ 14. Thomas was in a parking lot where he had a right to be when the incident occurred. A question arises as to whether Thomas could be considered the immediate provoker and aggressor since he fired a gun in the air. However, we find that a fact question is presented for the jury as to whether or not the attack on Thomas once he entered his car started a separate chain of events. “When serious doubt exists as to whether an instruction should be included, the doubt should be resolved in favor of the accused.”
 
 Id.
 
 at 74 (¶ 20) (quoting
 
 Davis v. State,
 
 18 So.3d 842, 847 (¶ 15) (Miss.2009)). We find serious doubt under the facts of this case. Thomas was entitled to a jury instruction that properly covered his theory of defense under the Castle Doctrine.
 

 ¶ 15. Next, we must determine whether the proposed instruction was covered elsewhere in the jury instructions. The State argues that the proposed Castle-Doctrine instruction was covered by the self-defense instruction. Jury instruction 11, the self-defense instruction, states:
 

 The Court instructs the Jury that to make a Murder justifiable on the grounds of self-defense, the danger to the Defendant must be either actual, present and urgent, or the Defendant must have reasonable grounds to apprehend a design on the part of the victim to kill him or to do him some great bodily harm; and, in addition to this, he must have reasonable grounds to apprehend that there is imminent danger of such design being accomplished. It is for the jury to determine the reasonableness of the grounds upon which the Defendant acts.
 

 Instruction 16 further instructs the jury on self-defense: “It has always been the law in this State that a defendant is not deprived of the right to claim self-defense in a slaying even if he could have avoided the threat to his safety by fleeing.”
 

 ¶ 16. We agree with Thomas that these instructions do not adequately present his theory of defense. Although the self-defense instruction is similar, it does not specifically address the commission of a felony against Thomas in his vehicle or whether the crowd was attempting to remove Thomas unlawfully from the vehicle against his will to cause him harm.
 

 ¶ 17. We find that jury instruction D-12 correctly stated the law and had a foundation in the evidence. We also find that it was not covered elsewhere in the instructions. Accordingly, we must reverse the judgment of conviction and sentence and remand this case for a new trial.
 

 ¶ 18. THE JUDGMENT OF THE DE-SOTO COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
 

 GRIFFIS, P.J., MYERS, ISHEE, ROBERTS, CARLTON AND RUSSELL, JJ., CONCUR. IRVING, P.J., BARNES AND MAXWELL, JJ., CONCUR IN PART AND IN THE RESULT.