RUSSELL, J., dissenting:
¶ 45. The majority finds that the trial court did not abuse its discretion by refusing to grant a Castle Doctrine jury instruction; refusing a jury instruction covering the right to repel a trespasser; and limiting the scope of the testimony of an expert witness. I would find that the court abused its discretion, resulting in White’s ability to fairly and adequately present her theory of defense being significantly and adversely impacted. Therefore, I respectfully dissent.
I. JURY INSTRUCTIONS
A. Castle Doctrine
¶ 46. The majority finds that the trial court did not err in refusing a jury instruction covering the Castle Doctrine, because the instruction lacked an evidentiary basis. I disagree. It is well-settled law that jury instructions are generally within the discretion of the trial court, and the standard of review for the denial of a jury instruction is abuse of discretion. Davis v. State, 18 So.3d 842, 847 (¶ 15) (Miss.2009). Nevertheless, “[t]he defense is entitled to an instruction covering its theory of the case so long as there is evidence in the record that would support that theory without regard to the probative value of that evidence so long as it is more than a mere scintilla of proof.” Lester v. State, 862 So.2d 582, 586 (¶ 12) (Miss.Ct.App.2004) (citing McGee v. State, 820 So.2d 700, 705 (¶ 9) (Miss.Ct.App.2000)).
¶ 47. The instruction requested by White reads:
The court instructs the jury that a person who uses defensive force shall be presumed to have reasonably feared imminent death or great bodily harm, or the commission of a felony upon her or upon her dwelling, or against a vehicle which she was occupying, if the person against whom the defensive force was used[ ] was in the process of unlawfully and forcibly entering, or had unlawfully and forcibly entered, a dwelling, occupied vehicle or the immediate premises thereof and the person who used defensive force knew or had reason to believe that the forcible entry or unlawful forcible act was occurring or had occurred.
Therefore, if you find from the evidence in this case that the deceased, Danielle Newsome, had unlawfully and forcibly entered the property surrounding Eboni White’s residence, or that Danielle Newsome, the deceased, was in the process of unlawfully and forcibly entering Eboni White’s residence or the property surrounding Eboni White’s residence, or Eboni White’s vehicle, and that Eboni White was aware that such forcible entry or unlawful act by Danielle Newsome was occurring or had occurred, then you shall presume Eboni White to have reasonably feared imminent death or great bodily harm at the time of the shooting, and you must, therefore, find the defendant, Eboni White, not guilty.
(Emphasis added).
¶ 48. The majority finds that the evidence presented at trial did not support the giving of this instruction. A determination of whether supporting evidence exists warrants a discussion of the Castle Doctrine. The Castle Doctrine, a statutory provision that justifies the use of deadly force in certain instances of self-defense, creates a presumption that the defendant reasonably feared imminent death or great bodily harm in certain prescribed circumstances. Newell v. State, 49 So.3d 66, 74 (¶ 22) (Miss.2010) (citing Johnson v. State, 997 So.2d 256, 260 (Miss.Ct.App.2008)). Mississippi Code Annotated section 97-3-15(3) (Rev. 2006), which embodies the Castle Doctrine, states:
*258 A person who uses defensive force shall be presumed to have reasonably feared imminent death or great bodily harm, or the commission of a felony upon him or another or upon his dwelling, or against a vehicle which he was occupying, or against his business or place of employment or the immediate premises of such business or place of employment, if the person against whom the defensive force was used[ ] was in the process of unlawfully and forcibly entering, or had unlawfully and forcibly entered, a dwelling, occupied vehicle, business, place of employment or the immediate premises thereof or if that person had unlawfully removed or was attempting to unlawfully remove another against the other person’s will from that dwelling, occupied vehicle, business, place of employment or the immediate premises thereof and the person who used defensive force knew or had reason to believe that the forcible entry or unlawful and forcible act was occurring or had occurred. This presumption shall not apply if the person against whom defensive force was used has a right to be in or is a lawful resident or owner of the dwelling, vehicle, business, place of employment or the immediate premises thereof or is the lawful resident or owner of the dwelling, vehicle, business, place of employment or the immediate premises thereof or if the person who uses defensive force is engaged in unlawful activity or if the person is a law enforcement officer engaged in the performance of his official duties;
(Emphasis added).
¶ 49. “In order to find that [a Castle Doctrine instruction] should have been given, we must first find that it had a factual basis in the evidence.” Thomas v. State, 75 So.3d 1112, 1115 (¶ 13) (Miss.Ct.App. 2011). To establish a factual basis under the Castle Doctrine, proof of the following two prongs from section 97-3-15 must be presented:
First, under subsection (4), if the defendant is in a place where he had a right to be, is not the immediate provoker and aggressor, and is not engaged in unlawful activity, he has no duty to retreat before using defensive force. Miss.Code Ann. § 97-13-5(4) (Rev. 2006). And second, if the jury finds that any of the circumstances in subsection (3) are satisfied, the defendant is presumed to have reasonably feared imminent death or great bodily harm or the commission of a felony upon him. Miss.Code Ann. § 97-3-15(3) (Rev. 2006).
Thomas, So.3d at 1115-16 (¶ 13) (citing Newell, 49 So.3d at 74 (¶22) (Miss.2010)).
¶ 50. It is undisputed that White was in a place where she had the right to be when the incident occurred. It is also undisputed that White was not the provoker and aggressor, as Newsome came onto the property surrounding White’s residence displaying violent behavior by screaming obscenities and threatening White. Thus, the first prong of the Castle Doctrine is established. The second prong requires an examination of the circumstances surrounding the incident that would entitle White to a presumption of fear.
¶ 51. Prior to the day of the incident, Newsome repeatedly harassed White, causing White to file a complaint with the Claiborne County Sheriffs Office. White’s effort at seeking refuge from Newsome’s constant harassment was futile, as New-some’s actions grew incessant. On numerous occasions, when White would come home from school, she would find New-some outside waiting for her, shouting obscenities and making threats. Despite White’s attempts to avoid confrontation, Newsome continued to harass and threaten White. Over a period of two weeks, *259 Newsome would bang on White’s door, cursing and yelling for White to come outside.
¶ 52. On the day of the incident, New-some, again, came onto White’s property screaming obscenities and making threats, telling White she was going to “F**k [her] up.” White remained inside her home for nearly an hour and a half while Newsome banged on White’s door, yelling: “B***h, come outside. I’m going to get you ... ain’t no way out. You’re going to see me today.” White made numerous phone calls for help before finally exiting her home and walking to her vehicle to leave. New-some met White at White’s vehicle, blocking White’s access to the driver’s door. Newsome’s violent threats continued as she approached White with her hand raised and containing a silver object. Fearing the object was a weapon, White quickly drew her handgun from her backpack and fired.
¶ 53. At trial, White testified that at the moment she fired the gun she was in fear for her safety. She stated that when New-some was approaching her with her hand raised, she thought Newsome was going to physically harm her. White stated that moments before the incident, Newsome threatened that she was going to “F**k [White] up,” and, considering Newsome’s history of violence,[7] White feared that when Newsome approached her, she would carry out her threat.
¶ 54. The majority states that there is no evidence to show that under the Castle Doctrine Newsome “unlawfully and forcibly entered” White’s dwelling or vehicle, nor that Newsome was attempting to remove White from her vehicle at the time of the incident; thus, a presumption of fear does not apply in these circumstances. However, the Castle Doctrine does not require that the person using defensive force be physically inside a dwelling or vehicle in order for the presumption of fear to apply. The doctrine provides that the presumption of fear applies “if the person against whom the defensive force was used[ ] was in the process of unlawfully and forcibly entering [the property] ... or the immediate premises thereof ... and the person who used the defensive force knew or had reason to believe that the forcible entry or unlawful and forcible act was occurring or had occurred.” Miss. Code Ann. § 97-3-15(3).
¶ 55. The incident took place in the immediate vicinity of White’s home, and right next to White’s vehicle. The evidence shows that Newsome had unlawfully entered the property surrounding White’s residence with the apparent intent of committing an assault on White. Newsome entered the premises, confronted White at the driver’s door of White’s vehicle, and while making threats, aggressively approached White with her hand raised holding an object, which according to White, appeared to be a weapon. White, while on her property, had ample reason to believe that she was in physical danger. Under these facts, the statutory presumption of fear undoubtedly applies. Based on this evidence, White was entitled to a Castle Doctrine jury instruction.
¶ 56. The majority states that because White was given other jury instructions relating to self-defense, her theory of the case was fairly covered elsewhere. However, no other jury instruction tracked the language of the Castle Doctrine and addressed the presumption that White reasonably feared imminent death or great bodily harm, thereby justifying her use of defensive force. In fact, one instruction *260 given to the jury regarding self-defense even raised the standard from having a “presumption of reasonable fear” to requiring proof that defensive force was “apparently necessary.” Jury instruction S-9 states:
The Court instructs the Jury that a person may not use more force than reasonably necessary to save his life or protect himself from great bodily harm. The question of whether he was justified in using the weapon is for determination for the jury. The law tolerates no justification and accepts no excuse for an assault with a deadly weapon on the plea of self-defense except that the assault by the defendant on the victim was necessary or apparently so to protect the defendant’s own life or his person from great bodily injury and there was an immediate danger of such design being accomplished. The danger to life or of great personal injury must be or reasonably appearf ] to be imminent and present at the time the defendant uses force with a deadly weapon. The term “apparent” as used in “apparent danger” means such overt, actual demonstration by conduct and acts of design to take life or do some great personal injury as would make the assault necessary to self preservation.
Rather than affording White a presumption of fear that would justify her use of defensive force, the language in jury instruction S-9 placed upon White the burden of proving that her use of force was “apparently necessary” to protect her life, notwithstanding (1) Newsome’s unlawful entry onto the premises and (2) Newsome aggressively approaching White with the intent to assault White. Further, the instruction states that “no justification” will be accepted other than a showing that the force was apparently necessary. Based on the evidence, White should not have been required to prove that her actions were apparently necessary. Conversely, White should have been presumed to be in reasonable fear for her safety.
¶ 57. The record shows that at the time of the incident, White feared for her safety and feared that Newsome would physically harm her on her property. The evidence amounts to far more than a mere scintilla of proof to support White’s theory of defense. Given the circumstances, White was entitled to a presumption of fear of imminent death or great bodily harm under Mississippi law. White sufficiently established a factual basis under the Castle Doctrine, and therefore should have been given a Castle Doctrine instruction to adequately and fairly present her theory of defense. Accordingly, I find that the trial court’s denial of White’s request for an instruction covering the Castle Doctrine was reversible error.
B. Right to Repel a Trespasser
¶ 58. The majority also finds the trial court did not abuse its discretion in refusing jury instruction D-14, covering the right to repel a trespasser. The instruction requested by White reads:
The court instructs the jury that deadly force may be employed to repel a trespasser who demonstrates the apparent purpose of assaulting or offering violence to an occupant of a dwelling or committing some other crime on the premises.
Therefore, if you find from the evidence in this case, that on the morning of the shooting, the deceased, Danielle Newsome, was trespassing upon the property lawfully occupied by Eboni White, and that Danielle Newsome had there demonstrated the apparent purpose of assaulting or offering violence to Eboni White on such property, then you *261 shall find the defendant, Eboni White, not guilty.
¶ 59. The majority states that there is no evidence to indicate that Newsome was trespassing on White’s property when the shooting occurred. However, the record shows that the incident took place in the immediate vicinity of White’s home, right next to White’s vehicle. In fact, after Newsome spotted White walking to her vehicle, Newsome crossed the street and arrived at the vehicle before White even reached it. White’s vehicle was parked in front of her trailer in an area referred to as a “common driveway.” White shared the driveway with roommates and residents of the trailer next door. Newsome, however, lived across the street, and did not share this driveway with White. Although the driveway was a “common” driveway, it was only common to those residents who shared it, which did not include Newsome. A question arises to whether Newsome was trespassing when she crossed the street, came onto the property surrounding White’s residence, and prevented White from leaving by blocking White’s access to her vehicle. This question should have been presented to the jury.
¶ 60. A review of the record shows that Newsome could have been considered a trespasser at the time she entered the driveway, and stood next to White’s vehicle, albeit a driveway that White shared with other residents. The driveway being considered a common area does not dispel the fact that the area was not lawfully shared with Newsome. Newsome was not a resident of the trailer adjacent to the driveway, and had no lawful right to be on any part of the premises surrounding White’s residence, let alone next to White’s vehicle, blocking White’s access. In any case, whether Newsome was trespassing was a fact issue for the jury to decide. There was evidence to support this theory of defense; and accordingly, the jury should have been given jury instruction D-14 covering this issue.
¶ 61. While on White’s premises, New-some aggressively approached White with her hand raised, demonstrating the apparent purpose of assaulting White. Given these circumstances, the jury should have been instructed that White had a right to use deadly force to repel Newsome if it is found that Newsome was trespassing at the time of the incident. This Court has held that “a defendant is entitled to have every legal defense he asserts to be submitted as a factual issue for determination by the jury under proper instruction of the court.” Thomas, 75 So.3d at 1115 (¶ 9) (citing Giles v. State, 650 So.2d 846, 849 (Miss.1995)).
¶ 62. The State argues that White’s theory of defense was covered in other jury instructions, and an instruction on White’s right to repel a trespasser was not warranted. However, the issue of whether Newsome was trespassing at the time of the incident is not discussed in any other jury instruction. This Court has held that “[a] party has the right to have his theory of the case presented to the jury by instructions, provided that there is credible evidence that supports that theory.” McGee v. State, 820 So.2d 700, 705 (¶9) (Miss.Ct.App.2000) (citing Alley v. Praschak Mach. Co., 366 So.2d 661, 665 (Miss. 1979)).
¶ 63. As discussed above, the record shows that there was ample credible evidence to support White’s theory of defense regarding the right to repel a trespasser. A jury instruction covering this right should have been given. “When serious doubt exists as to whether an instruction should be included, the doubt should be resolved in favor of the accused.” Thomas, 75 So.3d at 1116 (¶ 14) (citing Davis, 18 *262 So.3d at 847 (¶ 15)). The trial court’s refusal to grant the instruction on White’s right to repel a trespasser hindered her ability to adequately present her theory of self-defense. Therefore, I find that the trial court abused its discretion by denying White’s request for this instruction.
II. EXPERT TESTIMONY
¶ 64. The majority finds that the trial court did not err in limiting the expert testimony of defense witness Jeffrey Curtis. I disagree. The standard of review for the admission or exclusion of expert testimony is abuse of discretion. Gillett v. State, 56 So.3d 469, 494 (¶ 61) (Miss.2010) (citing Miss. Transp. Comm’n v. McLemore, 863 So.2d 31, 34 (¶ 4) (Miss.2003)). Reversal is proper when the trial court’s discretion has been abused and a substantial right of a party has been affected. Crutcher v. State, 68 So.3d 724, 730 (¶ 11) (Miss.Ct.App.2011) (citing Newell, 49 So.3d at 71 (¶ 9)). “[A] trial court’s discretion must be exercised within the confines of the Mississippi Rules of Evidence.” Ross v. State, 954 So.2d 968, 996 (¶ 56) (Miss. 2007) (citing Cox v. State, 849 So.2d 1257, 1268 (¶ 36) (Miss.2003); see also M.R.E. 103(a)).
¶ 65. During trial, Jeffrey Curtis was tendered as an expert in the fields of firearms, use of force, and defensive tactics. After being thoroughly questioned about his training and experience, the trial court stated that Curtis was “eminently qualified.” However, in spite of being accepted as an expert in the field of use of force and defensive tactics, Curtis was only permitted to offer testimony about the caliber of the gun used by White during the shooting. Curtis was expected to offer testimony concerning whether or not White’s actions were consistent with self-defense and reasonable under the circumstances. Curtis was also expected to offer testimony about his experience in training individuals under similar circumstances and whether it was appropriate for White to use deadly force under those conditions.
¶ 66. The trial court did not allow Curtis to testify as to use of force and self-defense despite Curtis being established as an expert in these fields. The trial court stated that testimony regarding whether an individual’s use .of defensive force is considered reasonable had no scientific basis and had never been accepted by the courts. However, such testimony is permitted under the Mississippi Rules of Evidence. The rule of evidence governing expert testimony provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
M.R.E. 702. It was well established during trial that Curtis had extensive training and experience in self-defense. He was the founder and president of a use-of-force based training company for civilians, law enforcement, and military, and had served in law enforcement for over twenty-five years. Neither the trial court nor the State expressed doubt as to Curtis’s qualifications as an expert. Curtis showed that he had specialized knowledge in the fields of self-defense and use of force; and his testimony covering these topics would have assisted the jury in determining the ultimate fact in issue: whether White’s actions were consistent with self-defense.
*263 ¶ 67. The trial court stated that Curtis was not in a better position than the jury to determine whether White’s use of force was reasonable. However, the rules of evidence permit expert witnesses to offer testimony embracing the ultimate issue, even though the issue is a factual issue. The applicable rule of evidence states, “Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.” M.R.E.704.
¶ 68. This Court has held that “[tjhere is no invalidity to an expert witness’s testimony even if the answer is in effect also a legal conclusion, if what underlies that conclusion is within the witness’s specialized area of expertise.” McBeath v. State, 789 So.2d 451, 454 (¶15) (Miss.Ct.App.1999). Although the question of whether White’s use of defensive force was reasonable is a question that embraces the ultimate issue, Curtis should have been allowed to offer testimony regarding this issue considering he was accepted, without objection, as an expert in the very field on which the issue is based. Prohibiting Curtis from offering this testimony obstructed White’s theory of self-defense, as Curtis was the only witness at trial who was competent to testify in relation to use of force and self-defense.
¶ 69. It is uncontested that the admission of expert testimony is within the discretion of the trial court. But, in this case, the trial court’s discretion was not exercised within the confines of the Mississippi Rules of Evidence; and, as a result, White’s ability to present an adequate theory of defense was severely limited. For this reason, I find the trial court abused its discretion by limiting the expert testimony of Curtis.
CONCLUSION
¶ 70. I find that the trial court’s refusal of White’s requested jury instructions covering the Castle Doctrine and the right to repel a trespasser, in addition to limiting the testimony of an expert witness was an abuse of discretion. Accordingly, I would reverse and remand for a new trial.
CARLTON, J., JOINS THIS OPINION.

. White stated that she saw Newsome in multiple physical fights. White also witnessed Newsome pull a gun on a woman by the name of Sherina Washington.