IRVING, P.J., for the Court:
¶ 1. On May 18, 2011, a jury convicted Jerry Stribling of manslaughter. The Leake County Circuit Court sentenced him to twenty years’ imprisonment in the custody of the Mississippi Department of Corrections, with eighteen years to serve, two years suspended, and two years of post-release supervision. Stribling filed a motion requesting a new trial or a judgment notwithstanding the verdict, which the circuit court denied. Feeling aggrieved, Stri-bling appeals and argues that the circuit court erred by refusing a jury instruction and by delaying lunch for the jurors until after they had reached a verdict.
¶ 2. Finding no error, we affirm.
*667 FACTS
¶ 3. On November 7, 2009, Stribling shot and killed his nephew, Jerry McBeath, after an argument. Stribling shot McBeath once in the left arm and once in the lower abdomen. The second shot was fatal. A Leake County grand jury indicted Stri-bling for murder.
¶ 4. Greg Wells, another nephew of Stri-bling, testified that he, Stribling, and McBeath had installed a deer feeder on his family’s property on the day of the shooting. Afterwards, they went to Wells’s mother’s house for a family gathering. Although Wells classified the relationship between Stribling and McBeath as a close familial relationship, he also stated that it was not uncommon for the two to argue. However, Stribling and McBeath always made up after the arguments.
¶ 5. Wells stated that on the day of McBeath’s death, Stribling and McBeath were arguing about the life of a family member that had passed away. During the argument, McBeath pulled a knife out of the side of his jogging pants and started walking towards Stribling. Stribling reached into his pocket and pulled out a knife as well. Wells stated that he interjected and told them to put the knives away. According to Wells, Stribling started to back away from McBeath. He moved toward the driver-side door of his truck. When Stribling tried to open the door, McBeath had his hand on the door. Eventually, McBeath stepped away, and Stribling was able to open the door, get inside the truck, close the door, and roll up the window. Wells testified that he felt that things had calmed down at that point. When Stribling started his truck, McBeath turned to walk away. As McBeath walked away, Stribling got out of his truck and made a comment to McBeath. When McBeath turned around, Stribling shot him.
¶ 6. Stribling testified that, on the day of the incident, McBeath came to his home to ask for financial help, but he was unable to help him. As stated, he, McBeath, and Wells later installed the deer feeder. They used Stribling’s truck to transport the deer feeder. After installing the deer feeder, Stribling, McBeath, and Wells went to a family barbecue. Stribling stated that when they got to Wells’s mother’s house, he, McBeath, Wells, and others stood around his truck drinking. He also noted that he and McBeath had argued in the past, but they would always “get back together.”
¶ 7. According to Stribling, McBeath was standing at or sitting on the tailgate of Stribling’s truck. Stribling was standing near the tailgate on the driver’s side of the truck. When he and McBeath began to argue, McBeath pulled his knife. He thought that McBeath was joking until McBeath started trying to stab him with the knife. Stribling acknowledged that he pulled out a knife too, but insisted that he threw his knife into the bed of the truck when he realized that McBeath was serious. Stribling backed away from McBeath, got into his truck, and rolled up the window. He also noted that he started his truck but decided not to leave. He described his decision not to leave as a “matter of honor” and not allowing anyone to “run him off’ of his family’s property. He opened his door, placed one foot on the ground, and turned to speak to McBeath. Stribling asked McBeath why he wanted to stab him. According to Stribling, McBeath turned around and ran towards him with the knife in his hand. Stribling then shot McBeath in the arm. Stribling testified further that despite McBeath being shot, McBeath continued to move towards him with the knife in his hand. He shot McBeath again. He stated that he thought that McBeath had gone crazy, and *668 that he feared for his life. He stated that he did not mean to kill McBeath, but he was only defending himself.
¶8. Additional facts, as necessary, will be related during our-analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

I. Jury Instruction D-12

¶ 9. Stribling contends that the circuit court erred in refusing to give his “stand-your-ground” jury instruction. The circuit court determined that “justifiable homicide” had been properly covered in other instructions and that the Castle Doctrine, the origin of D-12’s language, was inapplicable to these facts. “[T]he standard of review for the denial of jury instructions is abuse of discretion.” Newell v. State, 49 So.3d 66, 73 (¶20) (Miss.2010) (citing Davis v. State, 18 So.3d 842, 847 (¶ 15) (Miss.2009)).
¶ 10. It is well settled that “[a] defendant is entitled to have jury instructions given which present his theory of the case[.]” Spires v. State, 10 So.3d 477, 483 (¶ 28) (Miss.2009) (quoting Heidel v. State, 587 So.2d 835, 842 (Miss.1991)). The court, however, “may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.” Id. (quoting Heidel, 587 So.2d at 842). Additionally, “[a] ... court is not required to give instructions which are covered by other instructions although the language may differ.” Id. (quoting Davis v. State, 431 So.2d 468, 475 (Miss.1983)).
¶ 11. We cannot say that the circuit court erred in refusing Stabling's proffered jury instruction. The instruction is not supported by the evidence, and Stabling’s theory of the case was covered adequately and fairly in other jury instructions. In this case, Stabling asserted that he shot McBeath in self-defense. Jury instruction D-12 focuses on the duty to retreat before using defensive force, and states:
The court instructs the jury that while the danger which will justify the taking of another’s life must be imminent, impending, and present, such danger need not be unavoidable except by killing in self-defense. Jerry Stribling need not have avoided the danger to his person that was presented by the victim by flight. So long as Jerry Stribling was in a place where he had the right to be, and was neither the initial provoker nor aggressor, he may stand his ground without losing the right to self-defense.
Stribling argues that he was entitled to instruction D-12 because the State implied that he had a duty to leave the scene after his altercation with McBeath. We disagree. While the State asked Stribling during cross-examination if he could have left the scene instead of choosing to stay and confront McBeath, the State did not indicate that Stribling had a duty to do so.
¶ 12. Also, it is clear from the evidence that Stribling and McBeath were engaged in an argument prior to the shooting. However, all of the evidence presented demonstrated that the initial altercation between Stribling and McBeath was over. In fact, McBeath had walked away from Stribling minutes before Stribling confronted him. So, Stribling had become the aggressor, and was, therefore, not entitled to an instruction on the right to stand his ground and not retreat.
¶ 13. Furthermore, although no other jury instruction addressed “flight” or Stabling’s right to “stand his ground,” his theory of the case — self-defense—was covered in jury instruction D-14. D-14 states:
*669 The court instructs the jury that to make a killing justifiable on the ground of self-defense, the danger to the defendant must be either actual, present and urgent, or the defendant must have reasonable grounds to believe that the victim intended to kill the defendant or to do him some great bodily harm, and in addition to this, he must have reasonable grounds to believe that there is imminent danger of such act being accomplished. It is for the jury to determine the reasonableness of the grounds upon which the defendant acts. If you, the jury, unanimously find that the defendant acted in self-defense, then it is your sworn duty to return a verdict in favor of the defendant.
¶ 14. Throughout trial, Stribling maintained that he shot McBeath because he feared for his life, and jury instruction D-14 adequately and fairly addressed that theory, which the jury apparently believed to some extent, as he was convicted of manslaughter as opposed to the indicted charge of murder. Thus, we hold that the circuit court did not abuse its discretion in refusing jury instruction D-12. This issue is without merit.

2. Influenced Jury Verdict

¶ 15. Sti'ibling argues that the circuit court improperly influenced the jury by withholding lunch from the jury until it reached a verdict. We disagree. The Mississippi Supreme Court has previously stated that “it is within the sound discretion of the [circuit court] as to how long [it] will keep the jury in deliberation, and this discretion will not be reviewed on appeal unless there has been a clear abuse of discretion.” Sipp v. State, 986 So.2d 326, 332 (¶ 13) (Miss.2006) (quoting Greenlee v. State, 725 So.2d 816, 824 (1118) (Miss.1998)) (internal quotation marks omitted).
¶ 16. Here, the jury began deliberations at 11:02 a.m. At 1:02 p.m., the court summoned the jury and requested a status report. After the jury informed the court how the votes were divided, the court, reassuring the jury that it was not trying to deprive the jury of lunch, requested that the jury continue deliberating. The jury returned a verdict a short time later. There is no evidence in the record, however, that the circuit court delayed lunch in an attempt to force the jury to reach a verdict. Therefore, we cannot find that the circuit court abused its discretion by allowing the jury to continue deliberations prior to receiving lunch. This issue is without merit.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF LEAKE COUNTY OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH EIGHTEEN YEARS TO SERVE, TWO YEARS SUSPENDED, AND TWO YEARS OF POST-RELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEAKE COUNTY.
LEE, C.J., GRIFFIS, P.J., ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.