BURKE, Judge.
William Darnell Kidd was convicted of murder, a violation of § 13A-6-2, Ala.Code 1975, and was sentenced as a habitual felony offender to life imprisonment. He was ordered to pay court costs and a $50 assessment to the Crime Victims Compensation Fund. This appeal follows.
The evidence at trial established that on July 2, 2009, Kidd went to the home of the victim, William Hampton,[1] and, after a brief argument, shot him in the chest. Hampton later died as a result of the wounds. There was conflicting testimony about the events leading up to and surrounding the shooting. Kidd asserted that Hampton pointed a gun at him and that he shot Hampton only in self-defense. However, the State presented two witnesses who testified to the contrary. One witness stated that, as far as he could tell, Hampton was unarmed. (R. 142.) However, another witness testified that Hampton was armed but that Hampton’s gun did not have a clip in it. (R. 218.)
Kidd testified at trial. He stated that he and Hampton were friends and that he went to Hampton’s house that day to “check up on him.” (R. 244.) Kidd stated that he was armed with a .40 caliber pistol that day and that Hampton asked if he could have the weapon. (R. 249-50.) Apparently, Hampton had a .45 caliber pistol but wanted to trade guns with Kidd because Kidd’s gun could hold more bullets. According to Kidd, an argument began when he refused to give Hampton the .40 caliber pistol. (R. 250.) However, Kidd eventually decided to give the gun to Hampton. Kidd stated: “After we argued about that, I put the gun — I say, ‘Here, Bro, take this shit.’ So when I give him the .40 caliber he hands me the .45. When he handed me the .45,1 put the gun on my waistline.” (R. 252.) Kidd testified that, as he turned around to leave, he heard someone yell, “Shoot that nigger,” at which point he turned around to find Hampton pointing the .40 caliber at him. (R. 257.) Kidd then pulled out the .45 caliber pistol and shot Hampton. He testified that Hampton had a reputation for violence and he felt like he had to shoot Hampton or else he would have been killed. (R. 258.) Kidd admitted that, at the time of the shooting, he was a convicted felon and was aware that he was violating the law by carrying a gun. (R. 262.)
On appeal, Kidd argues that the trial court’s jury instruction regarding self-defense was misleading because, he says, it was contrary to the plain language of § 13A-3-23, Ala.Code 1975, Alabama’s *1263 self-defense statute. Additionally, he contends that his trial was unfair because of certain remarks made by the State during its closing argument.
I.
Under Alabama law, a person is justified in using deadly physical force against another person if he or she reasonably believes that the other person is “using or [is] about to use unlawful deadly physical force.” § 13A-3-23(a)(l), Ala.Code 1975. Furthermore, a person who is justified in using deadly physical force pursuant to § 13A-3-23(a) has no duty to retreat and has the right to stand his or her ground as long as the person “is not engaged in an unlawful activity.” § 13A-3-23(b), Ala. Code 1975. On appeal, Kidd argues that the trial court’s jury instruction on self-defense was misleading because, he says, it was contrary to the plain language of § 13A-3-23(b). (Kidd’s brief, at 9.)
However, the trial court gave the following jury instruction in relation to self-defense: “A person who is justified in using physical force, including deadly physical force and who is not engaged in an unlawful activity and is in a place where he has a right to be, has no duty to retreat under our law, and has the right to stand his ground.” (R. 343.) This jury instruction essentially tracks the language of § 13A-3-23(b), Ala. Code 1975, which states:
“A person who is justified under subsection (a) in using physical force, including deadly physical force, and who is not engaged in an unlawful activity and is in any place where he or she has the right to be has no duty to retreat and has the right to stand his or her ground.”
This jury instruction is not contrary to the plain language of the statute.
It appears that Kidd’s argument revolves around the meaning of the phrase, “unlawful activity.” At trial, the State contended that, because Kidd was a felon in possession of a firearm, he was engaged in an unlawful activity and therefore had a duty to retreat under § 13A-3-23(b).[2] On appeal, Kidd argues that the “unlawful activity” mentioned in § 13A-3-23(b), refers only to the crimes enumerated in § 13A-3-23(a)(3), i.e., “kidnapping in any degree, assault in the first or second degree, burglary in any degree, robbery in any degree, forcible rape, or forcible sodomy.” See § 13A-3-23(a)(3), Ala.Code 1975. Therefore, according to Kidd, the court’s jury instruction, which failed to define “unlawful activity,” imposed upon him a duty to retreat that did not exist. However, this argument was not raised at trial; therefore, it is not preserved for appellate review.
“ ‘Review on appeal is restricted to questions and issues properly and timely raised at trial.’ Newsome v. State, 570 So.2d 703, 717 (Ala.Crim.App.1989). ‘An issue raised for the first time on appeal is not subject to appellate review because it has not been properly preserved and presented.’ Pate v. State, 601 So.2d 210, 213 (Ala.Crim.App.1992). ‘“[T]o preserve an issue for appellate review, it must be presented to the trial court by a timely and specific motion setting out the specific grounds in support thereof.” ’ McKinney v. State, 654 So.2d 95, 99 (Ala.Crim.App.1995) (citation omit *1264 ted). ‘The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial.’ Ex parte Frith, 526 So.2d 880, 882 (Ala.1987). ‘The purpose of requiring a specific objection to preserve an issue for appellate review is to put the trial judge on notice of the alleged error, giving an opportunity to correct it before the case is submitted to the jury.’ Ex parte Works, 640 So.2d 1056, 1058 (Ala.1994).”
Ex parte Coulliette, 857 So.2d 793, 794-95 (Ala.2003).
The trial court held a lengthy discussion regarding jury instructions on self-defense after which defense counsel stated: “We have no objection.” (R. 305.) After the court gave the jury instructions and asked for exceptions, defense counsel stated:
“I will go on record as saying we had an off-the-record discussion about the duty to retreat and how that might spring back into action based on the allegation that [Kidd] was involved in an unlawful activity and, therefore, had no right to stand his ground.
“I would just ask that you give the jury some instruction on the duty to retreat and the law as it [is] used to apply to the duty to retreat prior to the amendment of the self defense statute.
“In other words, the — If he reasonably believed that he could not retreat in complete safety, I think that might be appropriate here. I just state that for the record.”
(R. 355-56.) Thus, Kidd’s objection did not relate to the court’s failure to define “unlawful activity” and the resulting duty to retreat the instruction placed on him. Rather, his argument was that the court should have given further instruction on the duty to retreat. Accordingly, Kidd’s argument was not presented to the trial
court and is therefore not preserved for appellate review.
Moreover, Kidd does not cite any authority for his position that an “unlawful activity,” as that term is used in § 13A-3-23(b), is limited to the crimes enumerated in § 13A-3-23(a)(3). The commentary to § 13A-3-23, Ala.Code 1975, states:
“Subsection (b) further qualifies the use of deadly force.
[[Image here]]
“... [T]he defendant who is not required to retreat because of the location of the attack must not have brought on the difficulty, i.e., was the original aggressor. This provision codifies Alabama law requiring complete freedom from fault in provoking the difficulty for one who claims defense of self, Brewer v. State, 160 Ala. 66, 49 So. 336 (1909), and conforms to contemporary revisions.”
In the present case, Kidd’s unlawful possession of the firearm contributed to the argument that eventually led to the shooting. Accordingly, he was not entirely free from fault. Therefore, § 13A-3-23(b) imposed a duty to retreat upon Kidd, and the trial court’s jury instruction to that effect was appropriate.
II.
Kidd also contends that the State made several prejudicial comments during closing arguments. Specifically, he refers to the prosecutor’s reference to the fact that Kidd, by being in possession of a firearm, was engaged in an unlawful activity. Kidd argues that the comments were unduly prejudicial because, he says, they were an incorrect statement of the law as it relates to self-defense. However, no objections were made during the State’s closing arguments. For the reasons stated regarding the issue disposed of in the previous sec *1265 tion, this argument is likewise not preserved for appellate review. See Ex parte Coulliette, supra. Additionally, because we have determined that the trial court’s jury instruction relating to self-defense was a correct statement of the law, this argument is also without merit.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
WINDOM, P. J., and WELCH and KELLUM, JJ., concur. JOINER, J., concurs in the result.

. William Hampton is also referred to in the record by the nickname "Red.”

. During the charge conference, the prosecutor stated: "That would be my reading of [§ 13A-3-23](b). If he is not engaged in unlawful activity, then he has no duty to retreat and has the right to stand his ground. I think the converse would be, if he is engaged in unlawful activity, he has a duty to retreat and does not have the right to stand his ground.” (R. 301-02.)