On Application for Rehearing
JOINER, Judge.
This Court’s opinion of August 30, 2013, is withdrawn, and the following is substituted therefor.
On September 12, 2012, Keith Daniel George was convicted of the murder of Russell Kent George, see § 13A-6-2, Ala. Code 1975. The trial court sentenced Keith to 50 years’ imprisonment. We reverse and remand.
Keith asserted that he acted in self-defense and, at trial, the State attempted to present evidence overcoming Keith’s self-defense claim. The State’s primary witnesses were Kalane Culley, who was Russell’s girlfriend at the time he was killed, and James Evans, the owner of the residence where the altercation between Keith and Russell began on March 15, 2009. Evans testified that he and some of his friends had been fishing on that day and had gone back to Evans’s residence to “grill out and all that.” Evans testified that he was friends with Keith and Russell and that both men stopped by his residence to visit on March 15, 2009. Evans testified that “[everybody was having fun [and] talking” and that he did not notice Keith and Russell having “any kind of dispute or issues” inside the residence. (R. 97-98.)
Testimony from Evans and Culley indicated that, once Russell and Keith left Evans’s residence, Keith attempted to prevent Russell, who was drunk, from driving and that Keith became an unprovoked aggressor. The defense, however, proffered the testimony of Keith and Jassen Martin, a long-time friend of Keith’s. Keith testified that he followed Russell to his car in an attempt to prevent Russell, who was drunk, from driving.[1] Keith testified that Russell quickly became belligerent when Keith attempted to convince him not to drive; according to Keith, Russell, who had gotten into his truck, responded “[h]ell no” when Keith asked him not to drive and “came out of [the] truck flogging [Keith].” (R. 556.) This “flogging,” Keith testified, resulted in Keith being struck in the tem *92 poral region of his head. (R. 558.) Keith testified that, at this point, he was stunned by the blow, and he spun around to grab a stick out of the bed of his truck.[2] Keith stated that he threw the stick down onto the ground between the two, thinking that the threatened use of the stick would rein in Russell’s aggression.[3] (R. 566.) Keith then testified that, instead, Russell picked up the stick and began hitting Keith with it. (R. 567.) According to Keith, he then maneuvered toward his driver-side door, opened the door, and retrieved his pistol from the center console of the truck.[4]
Keith testified that he produced the pistol in an attempt to ward off Russell’s attacks. (R. 569.) With pistol in hand, Keith walked backward toward the rear of the trucks and the edge of the property; Russell, however, continued to follow Keith, swinging the stick at him and landing some blows. Because of Russell’s continued aggression, Keith fired an initial shot. (R. 576.) Although the evidence indicated that Russell was shot three times, Keith testified that he remembered firing only one shot.
Martin testified that he was inside the residence when the initial altercation started but that he exited the residence as soon as Keith’s son informed him that Keith and Russell were fighting. (R. 451.) Upon exiting the residence, Martin witnessed Russell swinging the stick at Keith and Keith firing a shot at Russell. By this time, both Keith and Russell had made their way out of Evans’s yard and into a lot about 10 feet on the other side of the road. (R. 452-53.) According to Martin’s testimony, Russell continued to “come after” Keith, and the two were advancing in a “half-moon” pattern across the lot and back toward the road. (R. 458.)
When Martin was approximately two to three feet from Russell, he saw Keith fire the final shot.[5] (R. 458.) Martin testified that Keith was lying down when he fired the final shot. (R. 459.) Keith’s final shot caused Russell to drop the stick and fall. Martin caught Russell, helped him to the ground, and began administering CPR. Martin continued to render aid until first responders arrived. Emergency services transported Russell from the scene to Huntsville Hospital, where he later died as a result of the gunshot wounds. (R. 379-80.)
When it instructed the jury on self-defense, the trial court stated, in relevant part:
“The defendant is not justified in using deadly physical force upon another person and cannot prevail on the issue of self-defense if it reasonably appears or the defendant knows that he can avoid the necessity of using such force with complete safety by retreating.”
(R. 623.) After the trial court completed its oral charge, the following occurred:
“THE COURT: ... Any exception by the defense?
“[Defense counsel]: Yes, your Honor. I have an exception to the last phrase under the self-defense where it said he can avoid the necessity of using such *93 force with complete safety by retreating. Your Honor, I believe I’m correct on this, that the Code was corrected, amended June 1, 2006, that removed the duty to retreat and which allows an individual to stand one’s ground.
“THE COURT: Do you all know anything [about] that?
“[State’s attorney]: The statute as amended in 2006 permits you stand your ground if you’re in a place that you have a lawful—
“THE COURT: Isn’t it a dwelling house?
“[State’s attorney]: Yes, lawful place. I mean, they’re just in a lot. Neither of them have any ownership of the lot. He’s just on a property, doesn’t own it.
“THE COURT: I think that’s an appropriate charge we gave. I understand.
“[Defense counsel]: Okay.
“THE COURT: All right, sir.”
(R. 628-29.)
On appeal, Keith reiterates his argument that the trial court failed to properly instruct the jury on self-defense in accordance with § 13A-3-23, Ala.Code 1975; Keith asserts that the trial court’s instructions were based on a prior version of the statute and that the instruction misstated the current law of self-defense. Keith argues that his conviction is therefore due to be reversed. We agree.[6]
“A trial court has broad discretion in formulating its jury instructions, provided they are an accurate reflection of the law and facts of the case. United States v. Padilla-Martinez, 762 F.2d 942 (11th Cir.1985). However, a ‘defendant is entitled to have the court instruct the jury on his defense theory, “assuming that the theory has foundation in the evidence and legal support.” United States v. Conroy, 589 F.2d 1258, 1273 (5th Cir. 1979).’ United States v. Terebecki, 692 F.2d 1345, 1351 (11th Cir.1982). In order to determine whether the evidence is sufficient to necessitate an instruction and allow the jury to consider the defense, ‘we must accept the testimony most favorably to the defendant.’ (Citations omitted.) United States v. Lewis, 592 F.2d 1282, 1286 (5th Cir.1979).”
Coon v. State, 494 So.2d 184, 186 (Ala. Crim.App.1986).
Before 2006, Alabama’s self-defense statute addressed deadly force in defense of self, as well as the duty to retreat, as follows:
“(b) ... [A] person is not justified in using deadly physical force upon another person if it reasonably appears or he knows that he can avoid the necessity of using such force with complete safety:
“(1) By retreating, except that the actor is not required to retreat:
“a. If he is in his dwelling or at his place of work and was not the original aggressor .... ”
Effective June 1, 2006, however, § 13A-3-23, Ala.Code 1975, was amended to provide:
“(a) A person is justified in using physical force upon another person in *94 order to defend himself or herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful physical force by that other person, and he may use a degree of force which he or she reasonably believes to be. necessary for the purpose. A person may use deadly force, and is legally presumed to be justified in using deadly physical force in self-defense or the defense of another person pursuant to subdivision (4), if the person reasonably believes that another person is:
“(1) Using or about to use unlawful deadly physical force.
[[Image here]]
“(b) A person who is justified under subsection (a) in using physical force, including deadly physical force, and who is not engaged in an unlawful activity and is in any place where he or she has the right to be has no duty to retreat and has the right to stand his or her ground.”
Comparing the pre- and post-amendment versions of the statute, it is apparent that the trial court fashioned its charge— which included the language that “if it reasonably appears or the defendant knows that he can avoid the necessity of using such force with complete safety by retreating” — from the pre-amendment version of the statute. (R. 623.) This conclusion is bolstered by the discussion following Keith’s objection, during which the trial court referenced the “dwelling” requirement in the pre-amendment version. *(R. 628-29.)
We addressed a similar scenario in Williams v. State, 46 So.3d 970 (Ala.Crim.App.2010). In Williams, the trial court gave the following instruction on self-defense, which is nearly identical to the instruction given in this case:
“ ‘The Defendant is not justified in using deadly physical force upon another person, and cannot prevail on the issue of self-defense if it reasonably appears or the Defendant knows that he can avoid the necessity of using such force with complete safety by retreating, except that the Defendant is not required to retreat if he is in his own dwelling or was not the original aggressor.’ ”
46 So.3d at 970. This Court reversed Williams’s conviction and sentence, concluding that “[t]he trial court’s self-defense instruction did not substantially cover the language set forth in the amended version of § 13A-3-23(b)” and that “the instruction was an incorrect statement of law, and [that] the trial court erred when it refused to reinstruct the jury regarding the right to stand one’s ground pursuant to the current version of § 13A-3-23(b), Ala.Code 1975.” Williams, 46 So.3d at 971.
In the present case, the State argues that “had the trial court instructed the jury as suggested by [Keith] ... it would have been misleading and confusing.” (State’s brief, p. 12.) The State contends that “although [§] 13A-2-23 has been amended to include circumstances under which a person has no duty to retreat and can stand his ground, still there are circumstances under which a person must retreat, especially before using deadly force.” (State’s brief, p. 13.) In support of this position, the State cites Kidd v. State, 105 So.3d 1261 (Ala.Crim.App.2012).
In Kidd v. State, Kidd argued that “the trial court’s jury instruction regarding self-defense was misleading because, he said, it was contrary to the plain language of § 13A-3-23(b).” 105 So.3d at 1262. Kidd “admitted that, at the time of the shooting, he was a convicted felon and was aware that he was violating the law by carrying a gun.” 105 So.3d at 1262. At trial, the State argued that Kidd’s unlawful activi *95 ty — being a felon in possession of a firearm — imposed upon him a duty to retreat under § 13A-3-23(b). 105 So.3d at 1263. This Court agreed and held that “§ 13A-2 — 23(b) imposed a duty to retreat upon Kidd” because his “unlawful possession of the firearm [had] contributed to the argument that eventually led to the shooting.” 105 So.3d at 1264.[7]
The present case is distinguishable from Kidd. Here, Keith possessed a valid license for the pistol at the time of the shooting and was legally in possession of the pistol. The State did not argue that Keith had a duty to retreat because he was allegedly involved in an unlawful activity; rather, the State argued generally against the jury being instructed on self-defense. In response to Keith’s exception to the instruction given to the jury, which was based on the pre-amendment version of the self-defense statute, the State contended that Keith did not have an ownership interest in the place where the shooting occurred. The State’s “ownership” argument was based on the following emphasized language in § 13A-3-23(b), Ala.Code 1975, which provides that a person has no duty to retreat when he or she is “not engaged in an unlawful activity and is in any place where he or she has a right to be.” (Emphasis added.) That language, however, does not limit the “no-duty-to-retreat” provision of § 13A-3-23(b) to only those places in which a person has an “ownership” interest; rather, the no-duty-to-retreat provision applies if the person claiming its protection was “not engaged in an unlawful activity” and “[was] in any place where he or she ha[d] a right to be.” (Emphasis added.) See, e.g., Ex parte Pratt, 815 So.2d 532, 535 (Ala.2001) (“Principles of statutory construction instruct this Court to interpret the plain language of a statute to mean exactly what it says and to engage in judicial construction only if the language in the statute is ambiguous.”). Here, there was evidence indicating that the physical altercation between Keith and Russell began near their vehicles, which were parked in the yard at James Evans’s residence. Evans, as noted, testified that he was friends with both Keith and Russell and that both men had stopped and visited at his residence for several hours that day.
Unlike Kidd — who admitted that he was breaking the law by carrying a gun and was therefore engaged in an unlawful activity — Keith has not conceded that he did not have “a right to be” on Evans’s property where the altercation began or in the lot where the final shot was fired, and the record before us does not indicate .that Keith did not have such “a right to be” in either location. Moreover, on appeal the State initially abandoned its argument that Keith had a duty to retreat because he did not have an “ownership” interest in the property.[8]
*96 Although on appeal the State asserts that, “taking into consideration the evidence in this case,” a jury instruction under the amended version of § 13A-3-23, Ala.Code 1975 would have been “misleading and confusing,” the State does not challenge the trial court’s underlying decision to instruct the jury on self-defense. The State also does not identify what “evidence in this case” would have caused confusion, and it does not address the facts or theory of the defense that would provide the foundation for the underlying self-defense instruction. Coon, supra.
“Consequently, the circuit court’s jury instruction regarding the duty to retreat was an incorrect statement of the law and should not have been given. See Williams, 46 So.3d at 971 (citing Jackson v. State, 993 So.2d 45, 47-48 (Ala. Crim.App.2007)). Rather, the circuit court should have instructed the jury in accordance with § 13A-3-23(b), Ala. Code 1975, as amended. Further, the circuit court’s improper self-defense jury instruction was not harmless because the jury could have rejected [Keith’s] defense of self-defense based on the State’s evidence indicating that [ ]he could have retreated.”
Blake v. State, 61 So.3d 1107, 1109 (Ala.Crim.App.2010).
Accordingly, we reverse the trial court’s judgment and remand this case for proceedings consistent with this opinion.
APPLICATION FOR REHEARING OVERRULED; OPINION OF AUGUST 30, 2013, WITHDRAWN AND OPINION SUBSTITUTED; REVERSED AND REMANDED.
WINDOM, P. J., and WELCH and BURKE, JJ., concur.
KELLUM, J., concurs in the result.

. The Alabama Department of Forensic Sciences performed a toxicology test on Russell’s blood. The blood sample indicated that Russell’s blood-alcohol content was .189 grams per 100 milliliters. (R. 412.)

. Keith’s truck and Russell’s truck were parked next to each other in the yard at Evans’s residence. . The passenger-side door of Russell’s truck was adjacent to the driver-side door of Keith’s truck.

. No evidence in the record indicates that any other altercation had ever occurred between Keith and Russell.

. At the time of this incident, Keith possessed a valid permit for the pistol.

. The State asserts that Keith's argument is not preserved for appeal; the discussion related to the jury instruction clearly reflects that Keith objected to the jury instruction and proffered his explanation for his objection. See Goins v. State, 521 So.2d 97, 98 (Ala.Crim.App.1987) (“In order to preserve alleged error in the trial court’s oral instructions to the jury, the objection must be made prior to the jury’s retirement for deliberation.... The objection must be specific enough to point out the alleged error so as to allow the judge to correct the error.” (quotations and citations omitted)). Accordingly, Keith’s argument is preserved.

. Although this Court in Kidd held that Kidd had a duty to retreat under § 13A-3-23, that holding followed this Court's conclusion that Kidd’s argument was not properly presented on appeal. Thus, this Court's interpretation of § 13A-3-23, Ala.Code 1975, in Kidd was not essential to the judgment in that case. See Ex parte Williams, 838 So.2d 1028, 1031 (Ala.2002) ("Because obiter dictum is, by definition, not essential to the judgment of the court which states the dictum, it is not the law of the case established by that judgment.”). Additionally, the State's reliance on Spencer v. State, 58 So.3d 215 (Ala.Crim.App.2008), is misplaced; specifically, Spencer addressed the pre-amendment version of § 12A-3-23, Ala. Code 1975.

. In its application for rehearing, the State argues that Keith "failed to show that he was in a place where he had a right to be when he fatally shot the victim.” (State’s brief in support of application for reh’g, p. 1.) As noted, however, there was evidence indicating (although it was disputed) that Russell was the initial aggressor and that he began attacking *96 Keith on Evans’s property — where, it may reasonably be inferred from Evans's testimony, Keith had “a right to be” because he was a friend of Evans’s and had visited with Evans for several hours in Evans's residence immediately before the altercation with Russell. Thus, although the record is not clear as to who owned the lot where the fatal shot was fired, there was evidence indicating that Keith fired the fatal shot mere moments after attempting to retreat from Evans’s property where Russell had allegedly attacked him.