**Rel: 09/26/2014**

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2014

_____

## 1131202

_____

**Ex parte J.C. Franklin Samuels**

**PETITION FOR WRIT OF CERTIORARI
TO THE COURT OF CRIMINAL APPEALS**

**(In re: J.C. Franklin Samuels**

**v.**

**State of Alabama)**

(Marshall Circuit Court, CC-10-258;
Court of Criminal Appeals, CR-13-0103)

PARKER, Justice.

1131202

WRIT DENIED.  NO OPINION.

Stuart, Bolin, Shaw, Main, Wise, and Bryan, JJ., concur.

Moore, C.J., and Murdock, J., dissent.

1131202

MOORE, Chief Justice (dissenting).

J.C. Franklin Samuels was convicted of the murder of his son, Gregory Samuels ("Gregory"), and was sentenced to 45 years' imprisonment. Samuels claimed that he was acting in self-defense, which resulted in the unintentional killing of his son. Samuels objected to the jury instruction on self-defense, but on appeal the Court of Criminal Appeals held in an unpublished memorandum that Samuels's objection was not sufficiently specific to preserve the issue for appellate review. Samuels v. State (No. CR-13-0103, June 6, 2014), ___ So. 3d ___ (Ala. Crim. App. 2014) (table). I believe that there is a probability of merit to one of Samuels's claims, and I would grant certiorari review to address it. Therefore, I respectfully dissent from this Court's denial of the writ.

Sometime in the late summer or early fall of 2009, 35-year-old Gregory came to live with his father, 60-year-old Samuels, allegedly to avoid parole-violation and child-support charges in the State of New York. Gregory was 5'9", 195 pounds, and was alleged to have been a former professional boxer. Samuels was 6'2", 145 pounds, and had recently undergone treatment for cancer.

3

Gregory exhibited violent behavior toward his father while he was living with him. Gregory assaulted Samuels on one occasion, punching him in the face while Samuels was on his riding lawnmower and knocking him to the ground. As Samuels laid on the ground, Gregory stood over him and said, "What are you going to do now, old man?" David Smith, Samuels's nephew and Gregory's cousin, testified that Gregory became violent when he was drinking, especially when he was around Samuels. According to Smith, Gregory was disrespectful to Samuels and constantly threatened to "bash" his brains out or to "bash" his face in. Smith testified that he was afraid of Gregory and that Samuels appeared to be "very afraid" of Gregory.

On the evening of September 9, 2009, Gregory, Samuels, and Smith returned to Samuels's house after the men had been drinking and shooting pool. Smith testified that Gregory and Samuels got into an argument, after which Gregory called his brother in Indiana and told him that he was going to "give his dad a good ole a-- whooping." His brother replied, "Give him one for me." Smith, who overheard the conversation between Gregory and his brother because Gregory's cellular-telephone speaker was on, testified that the men did not appear to be

4

joking. Smith took Gregory to the store to buy beer, believing that getting him away from Samuels would calm him down. Before Gregory and Smith left, Gregory told Samuels that he was going to bash his face in when he returned. Samuels told his wife that if Gregory attempted to bash his face in when he returned, he would kill him.

When the men returned, Gregory jumped out of the truck and started running toward the house, allegedly telling Samuels, who was about 25 feet away, that he was going to bash his brains out. Samuels replied that this was the last time Gregory would bash his brains out, and then he shot him in the chest with a .22 caliber rifle. Gregory died from injuries inflicted by the gunshot. Samuels told the police that he meant to shoot Gregory in the stomach and that he did not mean to kill him by shooting him in the chest.

Samuels was tried for murder. At trial, Samuels objected to the following jury instruction: "An assault with the hand or fist, under ordinary circumstances, neither justifies nor excuses the use of a deadly weapon." Samuels objected to this instruction "as not being good law, and ... to the 'under ordinary circumstances' not being further defined." The trial

court overruled Samuels's objection, noting that the instruction would be given in conjunction with the following instruction: "[Y]ou are allowed to consider the difference in size, strength, and the difference in the ages of Gregory Samuels and J.C. Samuels in determining the reasonableness of the belief of J.C. Samuels of the imminent use of unlawful physical force by Gregory Samuels."

The jury found Samuels guilty of murder, and he was sentenced to 45 years' imprisonment. On appeal to the Court of Criminal Appeals, Samuels challenged the jury instruction. The Court of Criminal Appeals held that his objection was not sufficiently specific to preserve the issue for appellate review.

Samuels alleges, among other things, that the Court of Criminal Appeals' decision conflicts with George v. State, [Ms. CR-12-0642, March 14, 2014] ___ So. 3d ___ (Ala. Crim. App. 2014). In that case, Keith George was charged with murdering a man who had been assaulting him. The trial court gave the jury the following instruction:

> "'The defendant is not justified in using deadly physical force upon another person and cannot prevail on the issue of self-defense if it reasonably appears or the defendant knows that he

6

can avoid the necessity of using such force with complete safety by retreating.'"

George, ___ So. 3d at ___. George objected that the instruction was based on an outdated version of § 13A-3-23, Ala. Code 1975, which had been revised to eliminate the duty to retreat. The trial court overruled George's objection, and George was convicted of murder. On appeal, the Court of Criminal Appeals reversed the conviction, noting that the statute had been amended to allow a defendant to stand his or her ground. Consequently, the court concluded that "'the circuit court's jury instruction regarding the duty to retreat was an incorrect statement of the law and should not have been given.'" George, ___ So. 3d at ___ (quoting Blake v. State, 61 So. 3d 1107, 1109 (Ala. Crim. App. 2010)).

Like the trial court in George, the trial court in this case gave an instruction that did not accurately reflect the law. At the time of the offense, § 13A-3-23 provided, in relevant part:[1]

> "(a) A person is justified in using physical force upon another person in order to defend himself or herself ... from what he or she reasonably

_____

[1]Section 13A-3-23 was amended effective August 1, 2013. See Act No. 2013-283, Ala. Acts 2013. The quoted material remains the same.

believes to be the use or imminent use of unlawful physical force by that other person, and he or she may use a degree of force which he or she reasonably believes to be necessary for the purpose. A person may use deadly physical force, and is legally presumed to be justified in using deadly physical force in self-defense ... if the person reasonably believes that another person is:

"(1) Using or about to use unlawful deadly physical force.

"....

"(3) Committing or about to commit ... assault in the first or second degree ...."

The jury instructions in this case mentioned nothing about the legal presumption of justification under the circumstances listed in the statute, most notably when the aggressor is about to commit second-degree assault.[2] On the contrary, the trial court instructed the jury that a person is not justified

---

[2]Section 13A-6-21, Ala. Code 1975, provided, in relevant part:

"(a) A person commits the crime of assault in the second degree if the person does any of the following:

"(1) With intent to cause serious physical injury to another person, he or she causes serious physical injury to any person."

(Section 13A-6-21 was amended in 2010 and 2011. The quoted material has not changed.)

8

in using a weapon "under ordinary circumstances." This vague instruction probably led the jury to presume that Samuels was not justified in using deadly force, whereas the statute says that the jury should have presumed that he was justified in using such force if he reasonably believed Gregory was about to commit an assault in the second degree. Samuels objected that the phrase "under ordinary circumstances" was not sufficiently defined and that the instruction was based on bad law. I agree with Samuels's objections and believe they were sufficiently specific to preserve the issue for appellate review; therefore, it appears to me that the Court of Criminal Appeals' decision conflicts with George.

Because I am persuaded that there is a probability of merit in Samuels's assertion that the Court of Criminal Appeals' decision conflicts with George, I would grant the writ. Therefore, I respectfully dissent.