BARNES, J.,
dissenting:
¶ 31. Respectfully, I dissent from the majority’s decision to affirm Beal’s conviction. I find that the failure to submit a jury instruction on the castle doctrine constituted ineffective assistance of counsel. Such an instruction would have given the jury the option to determine whether Beal *1287 was presumed to have “reasonably feared imminent death or great bodily harm” when he used deadly force against Patel. Consequently, I would reverse and remand for a new trial.
¶ 32. In Newell v. State, 49 So.3d 66, 74 (¶ 22) (Miss.2010), the Mississippi Supreme Court discussed the provisions of the castle doctrine, noting:
It is clear to' us that, since the enactment of these statutes, Mississippi’s “[clastle [d]octrine” includes two prongs. First, under subsection'(4), if-the defendant is in a place where he had a right to be, is not the immediate provoker and aggressor, and is not engaged in unlawful activity, he has no duty to retreat before using defensive force. Miss.Code Ann. § 97-3-16(4) (Rev.2006). And second, if the jury finds that any of the circumstances in subsection (3) are satisfied, the defendant who uses such defensive force is presumed to have reasonably feared imminent death or great bodily harm or the commission of a felony upon him. Miss.Code Ann. § 97-3-15(3) (Rev.2006).
(Emphasis added). ..Here, the jury was presented with Jury Instruction D-6, which mirrors the language of subsection (4):
The Court instructs the jury [that] a person who is not the initial aggressor and is not engaged in unlawful activity shall have no duty to retreat before using deadly force if the person is in a place where the person has a right to be, and you are not permitted to consider the Defendant’s failure to retreat as evidence that the Defendant’s use of force was unnecessary, excessive or unreasonable.
Beal was in his cousin’s car where he had a lawful right to be,-and nothing indicates-he was the initial aggressor. The majority, however, agrees with the State’s contention that Beal.- was engaged in unlawful activity at the time of the incident (possession of a firearm by a minor, fleeing the scene of a crimé, and possession- of tobacco products by a minor) and, therefore, -was not entitled to a castle-doctrine jury instruction.
¶ 33; Beal argues that any unlawful activity excluding him from the castle-doctrine presumption “should be reasonably related to the confrontation at hand,” noting the unlawful activities listed by the State “were not the basis for Patel’s altercation with Beal,”-and he was not charged with these.other alleged crimes. I find Beal’s reasoning sound. What constitutes “unlawful activity”-is not defined in Mississippi’s statute, and even-with the evolvement of the castle doctrine in the last few years,[2] there is little caselaw regarding this issue, even in other jurisdictions. A recent decision by the Alabama Court of Criminal Appeals held that “[i]f a person enters a situation engaged in 'an unlawful activity that in any - way relates to or contributes to the situation, that person cannot avail himself or herself of the ‘no-duty-to-retreat’ right” "created by Alabama’s “stand your ground” statute. Fuller v. State, No. CR-14-0368, — So.3d -,-, 2015 WL 9261777, at *9 (Ala. Crim.App. Dec.18, 2015) (emphasis added). However, the court further concluded that it did not believe that the statute was “intended to avail armed violent felons' of its stand-your-ground law.” Id. at-, 2015 WL 9261777 at *10; see also Kidd v. State, 105 So.3d 1261, 1264 (Ala.Crim.App.2012) (finding that because the defendant, *1288 a prior felon, possessed a firearm, and the possession of the firearm led to the argument that resulted in the shooting of the victim, the defendant had a duty to retreat under the applicable statute). While our supreme court has not addressed this specific question in the castle-doctrine context, the court has held that for recovery under the Mississippi Tort Claims Act to be barred because of a victim’s criminal activity at the time of the injury, “it must be shown that the criminal activity has some causal nexus to the wrongdoing of the tortfeasor.” City of Jackson v. Perry, 764 So.2d 373, 379 (¶ 25) (Miss.2000) (emphasis added).
¶ 34. Beal, admittedly a minor who .plainly possessed a firearm, had no prior record, and no evidence suggests that he went to the gas station in anticipation of a violent altercation. Furthermore, I find the evidence was disputed as to. whether Beal was fleeing the gas station without paying. The teens testified that they offered payment to Patel. Concerning the possession of tobacco products by a minor, the store owner, Patel, would have ■ been equally culpable, in that regard, as his store had just sold the tobacco products to the minor. Thus, whether Beal was engaged in unlawful activity within the meaning of the castle doctrine was a question of fact for the jury to determine. Here the circuit court made no determination that Beal was engaged in unlawful activity, recognizing it as a question of fact for the jury, and the jury was properly instructed regarding the first prong recognized in Newell. See State v. Montgomery, No. E2014-01014-CCA-R3-CD, 2015 WL 3409485, at * *7-8 (Tenn.Crim.App. May 28, 2015) (Regarding a defendant’s claim of justifiable self-defense, “the question of whether the [defendant’s actions were unlawful at the- time of the shooting was a question for the jur[ors] in their role as fact-finders.”).
¶ 35. However, as the majority acknowledges, the jury was not instructed regarding the presumption created in subsection (3) of the statute. Instead, Beal’s counsel submitted a general “justifiable homicide” jury instruction (Jury Instruction D-l), which was given by the court. The supreme court in Newell .concluded that a trial court’s refusal of the defendant’s proposed jury instruction on the castle doctrine was an abuse of discretion. Newell, 49 So.3d at 78 (¶ 34). As a result, it reversed James Newell’s conviction of deliberate-design murder and, remanded for a new trial, holding:
[T]he jury should have been instructed that, if it believed Newell’s version of the events surrounding his altercation with [the victim], then it should presume that Newell used defensive force against [the victim] because he “reasonably feared imminent death or great bodily harm, or the commission of a felony upon him or against the vehicle which he was occupying.”
Id. (quoting Miss.Code Ann. § 97-3-15(3) (Rev.2006)). Furthermore, in Thomas v. State, 75 So.3d 1112, 1116 (¶¶ 16-17) (Miss. Ct.App.2011), our Court found that the trial court erred in refusing Justin Thomas’s proposed castle-doctrine instruction, as the jury instruction on self-defense “[did] not adequately present [the defendant’s] theory of defense.” We concluded that the failure to give the instruction warranted a reversal of Thomas’s conviction and a remand for a new trial, holding: “Although the self-defense instruction is similar, it does not specifically address the commission of a felony against Thomas in his vehicle or whether the crowd was attempting to remove Thomas unlawfully *1289 from the vehicle against his will to cause him harm.” Id., compare Matthews v. City of Madison, 143 So.3d 571, 577 (¶¶ 11-12) (Miss.2014) (finding there was no factual basis to support the giving of a castle-doctrine instruction, and the defendant was not entitled to the presumption).
¶ 36. Here, I find there was a factual basis in the evidence to support a castle-doctrine instruction. The witnesses inside the car testified Patel was reaching inside the car (across another youth), while yelling at and hitting Beal. Although eyewitness Rhymes denied there was any physical contact between Beal and Patel, characterizing it as a “verbal altercation,” Rhymes acknowledged that Patel “was inside the vehicle[,] ... positioned in the vehicle on the passenger side of the vehicle in the back seat.” Na-sif testified that Patel was waving his finger at Beal, although he said he did not see Patel reach inside the car. The teens further claimed that they saw a man standing behind Patel with a gun in his waistband. Evonye testified that the gun was “chrome.” According to Sergeant Felton, a black and silver semi-automatic handgun was later found inside the store, and a clerk and other employees were at the store at the time of the shooting.[3] Thus, there is evidence to support Beal’s claim that he was not the “initial aggressor” in this case, and Patel unlawfully entered the car Beal was lawfully occupying.
¶ 37. Consequently, the issue is whether trial counsel’s failure to propose a proper castle-doctrine instruction constituted ineffective assistance of counsel and prejudiced Beal’s defense. While I have found no cases in Mississippi addressing whether a counsel’s failure to submit a castle-doctrine instruction is prejudicial, I have found discussions from other jurisdictions instructive. In State v. Dale, No.2012 CA 20, 2013 WL 2406261, at *4 (¶ 20) (Ohio Ct.App. May 31, 2013), the Ohio Court of Appeals concluded that “[t]he trial court erred in failing to instruct the jury about the existence of the castle doctrine as an exception to the duty to retreat.” Addressing the claim of ineffective assistance of counsel, it stated:
An instruction on the castle doctrine could have established a critical element of [the defendant’s] self-defense claim, and there was no strategic basis to omit such an instruction.
[[Image here]]
Because we do not know the basis for the jury’s verdict, we conclude that there was a reasonable probability that, but for the incomplete jury instruction, the outcome of the case would have been different, i.e., the jury might reasonably have found that [the defendant] acted in self-defense.
Id. at *6 (¶¶ 27, 29). Conversely, in State ex rel. Adkins v. Dingus, 232 W.Va. 677, 753 S.E.2d 634, 641 (2013), the West Virginia Supreme Court found that counsel’s failure to submit such an instruction was not error. Although it recognized that “the threshold for justifying homicide under the castle doctrine is lower than under a traditional theory of self-defense,” it stated that counsel’s trial strategy to rely solely on self-defense “was objectively reasonable.” Id. at 640. Furthermore, it noted:
Having presented substantial evidence, counsel was not required to develop every conceivable defense that was available. Nor was counsel required to offer *1290 a defense or instruction on every conceivable defense. What defense to carry to the jury, what witnesses to call, and what method of presentation to use [are] the epitome of ,.. strategic decision[s], and ... one[s] that we will seldom,-if ever, second guess. Obviously, .lawyers always can disagree as to what defense is worthy of pursuing [-] “such is the stuff out of which trials are made.” Solomon v. Kemp, 735 F.2d 395, 404 (11th Cir.1984)....
We hold that the mere fact that trial counsel failed to offer a viable defense instruction is not alone a sufficient ground to prove ineffectiveness of counsel.
Adkins, 753 S.E.2d at 640-41 (quoting State v. Miller, 194 W.Va. 3, 459 S.E.2d 114, 127-28 (1995)), It concluded that while the evidence “may have been sufficient to warrant a eastle[-]doctrine instruction, trial counsel’s reliance on self-defense was not unreasonable^]” Id. at 641. There was some question in that case whether the victim was unlawfully on the premises, as he had been at the defendant’s home with permission intermittently throughout the evening. Id. at 640.
¶ 38. To prevail on his claim of ineffective assistance of counsel, Beal must show under Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), that his counsel’s failure to submit a castle-doctrine jury instruction “so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.” Our supreme court has held that “[w]hen claiming ineffective assistance of trial counsel because of jury instructions, ‘it is the duty of the appellant to demonstrate both error in failing to receive the instruction and the prejudice to the defense.’” Havard v. State, 928 So.2d 771, 789 (¶ 28) (Miss.2006) (quoting Burnside v. State, 882 So.2d 212, 216 (¶ 22) (Miss.2004)). However, “[a] criminal defendant has a right to assert alternative theories of defense, even inconsistent alternative theories.” Reddix v. State, 731 So.2d 591, 593 (¶ 9) (Miss.1999).
¶39. Beal asserts that had his “trial counsel offered the eastle[-]doctrine instruction, the'jury would have been instructed that if it believed Beal’s version of events surrounding his altercation with Patel, then it should presume that Beal used defensive force against Patel because he reasonably feared imminent death or great bodily harm[.]” The only reference made regarding the castle doctrine was asserted in Beal’s motion for a directed verdict, when counsel argued that Patel was trying to remove Beal from the vehicle and that Beal had “a right- to be inside that vehicle and lawfully so.” The circuit court denied the motion, noting that Beal -“was in a vehicle that could leave.” This comment by the judge disregards the explicit language in section 97-3-15(3) listing an “occupied vehicle” as a place where Beal had a right to “stand his ground” under the castle doctrine.
¶40. Based on Newell and Thomas, and the circumstances of this case, I find defense counsel’s failure to submit a jury instruction on the second prong of the castle doctrine deprived the jury of considering the presumption associated with the statute-a presumption not contained in Jury Instructions D-l and D~6—and prejudiced Beal’s defense. Unlike the majority, I can conceive of no strategic basis to omit such an instruction. Accordingly, I would reverse and remand for a new trial.
IRVING, P.J.; JOINS THIS OPINION.

. Subsections (3) and (4) were added to Mississippi’s justifiable-homicide statute in 2006.

. We note that there was no surveillance video of the incident.