KITCHENS, PRESIDING JUSTICE, DISSENTING:
 

 ¶ 65. I respectfully dissent. Jury Instruction S-14A erroneously singled out the identification testimony of Darius Wright and amounted to a comment on the quality and weight of his testimony. Additionally, the prosecutor used Robinson's exercise of his right to remain silent to impeach his trial testimony about his whereabouts at the time of the shooting, constituting plain error. Because of these errors, I would reverse and remand for a new trial.
 

 I. Jury Instruction
 

 ¶ 66. At the trial, it was undisputed that, during the early morning hours of March 6, 2011, someone fired multiple gunshots toward the entrance of the Creme de La Creme nightclub in Moss Point, Mississippi. The critical question was whether that person was Robinson. Darius Wright and several other witnesses identified Robinson as the culprit. But Wright was the only eyewitness to the shooting who had known Robinson before that night, having grown up with him in the Moss Point area. The State requested, and the trial court granted, Instruction S-14A, that provided the following:
 

 The Court instructs the jury that the burden is on the State to prove beyond a reasonable doubt that the offense was committed and that the defendant was the person who committed it. You have heard evidence regarding the identification of the defendant as the person who committed the crime. In this connection you should consider the witness's opportunity to observe the criminal act and the person committing it, including the length of time the witness had to observe the person committing the crime, the witness's state of mind, and any other circumstances surrounding the event. You should also consider the witness's certainty or lack of certainty, the accuracy of any prior description, and the witness's credibility or lack of credibility, as well as any other factor surrounding the identification.
 
 You have heard evidence during the trial that the witness, Darius Wright, identified the defendant.
 

 The identification of the defendant by a single eyewitness, as the person who committed the crime, if believed beyond a reasonable doubt, can be enough evidence to convict the defendant.
 

 It is for you to determine the reliability of any identification and give it the weight it deserves.
 

 (Emphasis added.) Instruction S-14A reminded the jury that Darius Wright had identified the defendant and that, if it believed his identification of the defendant as the shooter beyond a reasonable doubt, it could convict. Robinson argues that Instruction S-14A was erroneous because it emphasized the evidence that Wright in particular had identified him as the culprit.
 

 ¶ 67. "The judge in any criminal cause, shall not sum up or comment on the testimony, or charge the jury as to the weight of evidence ...."
 
 Miss. Code Ann. § 99-17-35
 
 (Rev. 2015). A jury instruction
 should not be given if it singles out certain evidence in a manner amounting to a comment on the weight of the evidence.
 
 Manuel v. State
 
 ,
 
 667 So.2d 590
 
 , 592 (Miss. 1995). A jury instruction also should not comment on the quality of the evidence.
 
 Howell v. State
 
 ,
 
 860 So.2d 704
 
 , 745 (Miss. 2003). On appellate review, this Court reads jury instructions as a whole, and if the instructions fairly announce the applicable law and create no injustice, we will find no reversible error.
 
 Davis v. State
 
 ,
 
 18 So.3d 842
 
 , 847 (Miss. 2009). But if the trial court abused its discretion by granting an erroneous jury instruction, we will not hesitate to reverse.
 
 Moody v. State
 
 ,
 
 202 So.3d 1235
 
 , 1236-37 (Miss. 2016).
 

 ¶ 68. The majority recognizes that error occurs if a jury instruction draws attention to a particular part of the evidence adduced at trial in a way that comments on its weight. Yet the majority finds that Instruction S-14A did no such thing. Certainly, the jury instruction told the jury to weigh the reliability of any identification and give it the weight it believed it deserved. And the jury instruction did not specifically say that the jury should convict if it believed Wright's testimony without assessing the other evidence. But the flawed jury instruction was not cured by those attributes. The problem with Instruction S-14A was that, although there were numerous eyewitnesses to the shooting, it focused the jury's attention on the State's strongest eyewitness, Darius Wright, the only eyewitness who previously had known Robinson. Every other eyewitness said that he or she had not known Robinson before the shooting, but that the shooter was the same person who had been thrown out of the club earlier that night and identified as Robinson. While it was permissible to instruct the jury on the law that the identification testimony of a single eyewitness, if believed beyond a reasonable doubt, was sufficient to convict, it was impermissible for the instruction to suggest that the most believable witness was the State's strongest witness, Wright. I would find that Instruction S-14A commented on the weight and quality of the evidence, and that the trial court abused its discretion by granting it.
 

 ¶ 69. I observe that it is beyond question that both the State and the defense viewed Instruction S-14A as a suggestion that the jury should find Wright's testimony to be especially weighty. At the jury instruction conference, defense counsel objected to the instruction on the basis that it singled out Wright from the group of eyewitnesses. Defense counsel said the instruction "would seem right to me if it wasn't for singling out Darius Wright. I mean, four [other] people up there basically identified him." The trial court's response indicated its view that the instruction's singling out Wright was a feature, not a problem: "the case hinges on the identification by Darius Wright. That's in evidence....
 
 It just focuses the jury's attention on that witness
 
 ." (Emphasis added.) The trial court overruled the objection. Of course, the judge should not be in the business of focusing the jury's attention on this or any other portion of the evidence.
 

 ¶ 70. During closing arguments, the prosecutor twice drew the jury's attention to Instruction S-14A:
 

 Ladies and gentlemen, we have eye witnesses as I said. I'll bring your attention to this jury instruction. Here you go, ladies and gentlemen. The identification of a defendant by a single eye witness as a person who committed the crime, if believed beyond a reasonable doubt, can be enough evidence to convict. I submit to you, Darius Wright, he identifies him.
 

 ...
 

 Now, if this was just-if I had just brought Darius Wright in here and that was the only witness y'all heard from, I'd still be telling you that if you believe him that's proof beyond a reasonable doubt because it is. Ms. Van Buskirk showed you the instruction.
 

 I find that Instruction S-14A was intended to be, and operated as, a judicial comment on the weight and quality of Darius Wright's testimony. Because the instruction erroneously placed undue emphasis upon the testimony of the State's strongest witness, Robinson's jury was improperly instructed, and I would reverse and remand for a new trial.
 

 II. The State's Comment on Robinson's Post-
 
 Miranda
 
 Silence
 

 ¶ 71. After Robinson's arrest, the police read him his
 
 Miranda
 

 [15]
 
 rights and he invoked his right to remain silent. Thus, Robinson exercised that constitutional right and never spoke to the police about his activities on the night of the shooting. At trial, Robinson testified on direct examination that he had left the club before the shooting and then had traveled to Mobile, Alabama. On cross-examination, the prosecutor questioned Robinson about that testimony:
 

 Q. I got one more question. That whole thing about Mobile and you not being there?
 

 A. Yes, sir.
 

 Q. First time that's ever been told is to this jury, isn't it?
 

 A. Okay; yes, sir.
 

 Defense counsel did not object to this question. On appeal, Robinson argues that the prosecutor's question constituted a plain error because it was an unconstitutional comment on his exercise of the right to remain silent.
 

 ¶ 72. The right to remain silent and against self-incrimination is guaranteed by the federal and state constitutions. U.S. Const Amend. V ; Miss. Const. Art. 3, § 26. The United States Supreme Court has condemned, as a violation of due process, the government's use of an accused's exercise of the right to remain silent to impeach his trial testimony.
 
 Doyle v. Ohio
 
 ,
 
 426 U.S. 610
 
 , 619,
 
 96 S.Ct. 2240
 
 ,
 
 49 L.Ed.2d 91
 
 (1976). "[I]n
 
 Doyle
 
 the U.S. Supreme Court held that if an accused under arrest was given a
 
 Miranda
 
 warning and told that he had a right to remain silent, and the accused did remain silent, that the government thereafter could not use his choice of remaining silent as a weapon during his trial testimony cross-examination to cast suspicion on his guilt or innocence."
 
 Puckett v. State
 
 ,
 
 737 So.2d 322
 
 , 350 (Miss. 1999). The State is not allowed to use the exercise of a constitutional right by the accused as "a weapon to convict him."
 

 Id.
 

 ¶ 73. In
 
 Emery v. State
 
 ,
 
 869 So.2d 405
 
 , 406 (Miss. 2004), the prosecutor elicited testimony on cross-examination about the defendant's whereabouts on the night of the crime. Because the defendant had not offered an alibi defense, the State was the only party to elicit the defendant's testimony about his whereabouts.
 

 Id.
 

 at 407
 
 . After the defendant explained where he had been, the prosecutor asked "And this is the first time that you have ever made that statement or told that story, isn't it?" and "In over a year's time since you've been arrested, this is the first time that you've told that story; isn't that correct?"
 

 Id.
 

 The defendant replied that, upon arrest, he had asked for a lawyer instead of talking to the police.
 

 Id.
 

 During closing arguments, the prosecutor used the defendant's testimony to argue: "Okay, there ain't nothing about this going to Leland to a barbecue stuff.
 

 Folks right there, you can tattoo 'liar' right across his forehead because that's what he did. He took that stand and he lied to you."
 

 Id.
 

 Thus, the prosecutor elicited alibi testimony from the defendant on cross-examination, then used the defendant's prior exercise of the right to remain silent to impeach the alibi testimony.
 

 Id.
 

 ¶ 74. The Court found that the issue was "whether the trial court committed reversible error by allowing the prosecutor to imply to the jury that Emery's post-arrest silence was an indication that he was untruthful and, by implication, an indication that he committed the crime."
 

 Id.
 

 at 408
 
 .The Court emphasized that the issue was not one of first impression because it had been decided almost thirty years previously in
 
 Doyle
 
 .
 

 Id.
 

 at 408-09
 
 .
 
 Doyle
 
 held that "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial."
 

 Id.
 

 at 408
 
 (quoting
 
 Doyle
 
 ,
 
 426 U.S. at 619
 
 ,
 
 96 S.Ct. 2240
 
 ). The Court also recognized that, in
 
 Quick v. State
 
 ,
 
 569 So.2d 1197
 
 , 1199 (Miss. 1990), we held that "[i]t is improper and ordinarily, reversible error to comment on the accused's post-
 
 Miranda
 
 silence."
 
 Id.
 
 at 408. Because the trial court improperly had permitted the prosecutor to use Emery's post-
 
 Miranda
 
 silence to impeach his trial testimony, in violation of
 
 Doyle
 
 , the Court reversed and remanded for a new trial.
 
 Id.
 
 at 410.
 

 ¶ 75. This case bears a striking resemblance to
 
 Emery
 
 . As in
 
 Emery
 
 , the prosecution impeached Robinson by eliciting his admission that the trial was the first time he had spoken about his whereabouts on the night of the crime. Because Robinson had exercised his right to remain silent, the prosecutor's use of his post-
 
 Miranda
 
 silence to impeach him and imply his guilt violated Robinson's federal and state constitutional due process rights. Further, considering the error in light of this Court's admonition in
 
 Emery
 
 that the law had been established for almost thirty years at the time of the decision, and that "[w]e would expect that this cross-examination technique employed by the prosecutor, and allowed by the trial court, would cease," I find that the error here was a plain, clear, and obvious one. Because the error violated Robinson's fundamental due process rights, resulting in a manifest miscarriage of justice, I would reverse.
 
 See
 
 M.R.A.P. 28(a)(3) (when a defendant's substantive or fundamental rights are affected, this Court will notice "a plain error not identified or distinctly specified.");
 
 Cozart v. State
 
 ,
 
 226 So.3d 574
 
 , 581 (Miss. 2017) (plain-error analysis requires "a determination of whether there is an error that is some deviation from a legal rule, whether that error is plain, clear or obvious, and whether the error is prejudicial in its effect upon the outcome of the trial court proceedings.").
 

 ¶ 76. The majority finds
 
 Emery
 
 distinguishable from this case because, unlike the defendant in
 
 Emery
 
 , Robinson offered an alibi defense at trial by testifying on direct examination that he had left the club before the shooting, bound for Mobile. The majority concludes that this distinction is critical because, pursuant to Uniform Rule of Circuit and County Court Practice 9.05, Robinson was supposed to have disclosed any alibi defense to the State upon demand:
 

 Upon the written demand of the prosecuting attorney ... the defendant shall serve within ten days ... upon the prosecuting attorney a written notice of the intention to offer a defense of alibi, which notice shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of
 the witnesses upon which the defendant intends to rely to establish such alibi.
 

 URCCC 9.05. Although the State demanded notice of Robinson's intent to offer an alibi defense, Robinson never responded. Therefore, the State's first notice of his alibi defense was at the trial.
 

 ¶ 77. The majority concludes that, because Robinson violated Rule 9.05 by failing to provide the State with notice of his alibi defense, "the prosecutor's question to Robinson about the novelty of his alibi defense [was] a comment on his failure to comply with a discovery rule rather than an attempt to attack the credibility of his testimony." But Robinson's failure to provide the State notice of his alibi defense was a purely procedural matter not relevant to the jury's determination of Robinson's guilt or innocence. It had no tendency to make Robinson's guilt, or any fact of consequence in the case, more or less probable.
 
 See
 
 M.R.E. 401(a). Therefore, trial testimony on the matter was immaterial and irrelevant.
 
 See
 
 M.R.E. 402 ("[i]rrelevant evidence is not admissible"). If the prosecutor had a problem with Robinson's offering an alibi defense due to his noncompliance with the discovery rule, the appropriate action would have been to inform the trial judge, not raise the matter before the jury. There was no reason for the prosecutor to have elicited testimony about it, because such testimony was irrelevant to anything properly before the jury, and it was inadmissible. The notion that the prosecutor's question was an inquiry into Robinson's noncompliance with Rule 9.05, rather than an attempt to cast suspicion on him due to his exercise of the right to remain silent, strains credulity.
 

 ¶ 78. The majority errs by deciding that the prosecutor's question was a comment on the irrelevant matter of Robinson's compliance with Rule 9.05, rather than a relevant, but impermissible, comment on his exercise of the right to remain silent. Even assuming
 
 arguendo
 
 that the defendant's failure to give the State timely notice of an alibi defense could have been a relevant jury issue in this case, no instruction was given to the jury to inform it of the existence of Rule 9.05 or to explain the relevance of the fact that Robinson's defense counsel had failed to comply with it. Nor was any limiting instruction given to the jury to consider Robinson's testimony for its tendency to show the Rule 9.05 violation as opposed to the unconstitutional purpose of impeaching his exercise of the right to remain silent.
 

 ¶ 79. As the majority notes, a prosecutor's comment on the defendant's post-
 
 Miranda
 
 silence has been found to be harmless error when there was overwhelming evidence of the defendant's guilt.
 
 Emery
 
 ,
 
 869 So.2d at 409
 
 . I would decline to deem the error in this case harmless. No physical evidence such as DNA or fingerprints linked Robinson with the crime. The weapon used in the shooting never was recovered, and the State did not prove that Robinson owned or had access to a gun. Robinson never confessed. The State's case rested solely upon the identification testimony of eyewitnesses whose impressions were formed in the chaotic atmosphere of a nightclub shooting. Therefore, the evidence of guilt was not overwhelming, rendering the prosecutor's insinuation that Robinson had concocted an alibi for the trial especially damaging. I would find that the prosecutor's impeachment of Robinson's alibi testimony with the evidence that he had exercised his right to remain silent was a plain error demanding that this Court reverse and remand for a new trial.
 

 Conclusion
 

 ¶ 80. Two significant errors occurred in this case. Instruction S-14A singled out the identification testimony of Darius
 Wright for special attention by the jury, constituting an improper comment on the quality and weight of the evidence. And a plain error occurred when the prosecutor used Robinson's post-
 
 Miranda
 
 silence to impeach his trial testimony that he was traveling to Mobile at the time of the shooting. Because these two errors should not be allowed to stand, I would reverse and remand for a new trial.
 

 KING, J., JOINS THIS OPINION.
 

 Miranda v. Arizona
 
 ,
 
 384 U.S. 436
 
 ,
 
 86 S.Ct. 1602
 
 ,
 
 16 L.Ed.2d 694
 
 (1966).