# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-00972-COA

**JEFFORY CHAD TURNER A/K/A JEFFORY C. TURNER A/K/A JEFFORY TURNER**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 06/15/2017 |
| TRIAL JUDGE: | HON. CELESTE EMBREY WILSON |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JOSEPH SCOTT HEMLEBEN |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED: 12/04/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., CARLTON AND FAIR, JJ.**

**FAIR, J., FOR THE COURT**:

¶1.     On April 19, 2017, following a jury trial, Jeffory Chad Turner was convicted of child exploitation, in violation of Mississippi Code Annotated section 97-5-33 (Rev. 2014), and sentenced to seventeen years in the custody of the Mississippi Department of Corrections with seven years to serve, followed by ten years of post-release supervision. Turner appeals. For the following reasons, we affirm.

## FACTS

¶2.    On September 29, 2015, Detective Brannon Rushing, of the Southaven Police Department, placed an online advertisement in the personals section of the Memphis Craigslist website[1] (Craigslist), in furtherance of an online investigation.  At the time, Detective Rushing was assigned to the Mississippi Attorney General's Office's Internet Crimes Against Children Task Force (task force).  The task force was created to help State and local law enforcement agencies respond to offenders who use the internet, online communication systems, or other computer technology to sexually exploit children.  The task force requires training, which Detective Rushing received.

¶3.    The online advertisement posted at 9:18 a.m. was titled "Curious in the Haven-m4m[2] (Southhaven)," and read, "Hi.  I am an attractive younger guy who has only been with girls. I am curious about the lifestyle and can host today until 5.  HMU."[3]  At 10:21 a.m., Turner responded to the post, sending the following communication: "Sounds like fun! Would love to help you learn."

¶4.    Over about a two-hour period, the following conversation occurred between Detective Rushing posing as Timothy, a fifteen-year-old, and Turner:

Timothy 10:24 a.m.:    Man, I am nervous about the whole thing because I have only been with a girl and I have no idea what to do.  I know that I do not want my friends to know about this!

_____

[1] This website may be accessed at https://www.craigslist.com.

[2] "Male for male."

[3] "Hit me up."

2

Turner 10:28 a.m.:      I understand! I'm not out and no one knows about me doing it either. We can make sure that no one knows.

Timothy 10:32 a.m.:      I have limited time that I can do it because I skipped classes today and I have the house to myself until this evening. I wouldn't even know how to start though. LOL[4]

Turner 10:50 a.m.:      We just start by sitting and talking and let things develop from there.

Timothy 10:57 a.m.:      Well my parents won't be home until late this evening. They don't know I skipped school. Its not like I am that young though, I will turn 16 in January. I am just nervously that I won't like it and someone will be too pushy.

Turner 11:04 a.m.:      I can assure you I won't go any further than you want to go. I'm a laid back guy.

Timothy 11:07 a.m.:      Cool. You think you could come over today? I don't normally have the house to myself without my parents. What are your stats.

Turner 11:10 a.m.:      Yeah. I can head over now if you want.

Turner 11:11 a.m.:      I'm white, 27, 5'10", brown hair, glasses. How about you?

Timothy 11:12 a.m.:      [W]hat do you look like (age, race, etc) [?]

Timothy 11:15 a.m.:      [S]orry didn't see that message before I sent that last. I am 15 blonde, 5'11" 170 white. I hope that sounds good. It will be a little bit because I want to take a shower and stuff. I been laying around all day.

Turner 11:18 a.m.:      [image of Turner]

Turner 11:48 a.m.:      I'm headed to Southaven now. Just let me know your address.

---

[4] "Laugh out loud."

Timothy 11:50 a.m.: Hey man, sorry I was in the shower. Man I am nervous and I will need you to lead. Can you give me an idea of what we will be doing so I will know what to expect. I am scared. LOL. Oh and I have a better idea than you pulling up the drive way.

Turner 11:56 a.m.: It's all good, man. We will just sit down wherever you want and talk for a bit. Maybe talk about normal stuff, then about why you want to try this. Once you're a bit more comfortable I'll start to rub your leg or something. I'd like to strip, kiss and give oral to each other, but it's all if you're comfortable. Cool. What's your address and what's the plan for all that?

Timothy 11:59 a.m.: Would you give me [oral sex] even if I didn't give [it] back? I am not sure that I would enjoy it yet. Like I said, I have only been with girls. Are you familiar with Southaven?

Turner 12:01 p.m.: Yeah, I don't have to get one to give you one. And I'm fairly familiar Southaven.

¶5.    At the end of the conversation, Turner agreed to meet at a park near Timothy's house. When Turner arrived at the agreed upon location, he was arrested and taken into custody. Detective Rushing and Detective Kern conducted a police interview. Prior to questioning Turner, Detective Rushing advised Turner of his *Miranda*[5] rights, and Turner signed a waiver of those rights.

¶6.    Detective Rushing concealed the fact that Turner had been communicating with him and not a fifteen-year-old boy named Timothy. Detective Rushing conducted the interview as though he had been notified by Timothy's father. During the interview, Detective Rushing suggested that Turner write a letter to Timothy's parents. The detectives then left the

---

[5] *Miranda v. Arizona*, 384 U.S. 436 (1966).

interview room in order to give Turner the opportunity to write.

¶7.    Turner wrote the following:

Dear Mr. Singleton,

I cannot find the words to express how sorry I am for what I have done. I have put you and your family through an awful situation. I do not expect you to forgive me, and I do not think I can forgive myself. You deserve better, and Timothy deserves better. I was not initially aware of his age[,] but I let my sinful nature get the better of me, and I made the biggest mistake in continuing the conversation. I can tell you about how people lie about their age on Craigslist but that does not matter now. I am a terrible person for this and I promise you that not a day will go by [that] I do not feel immense guilt and shame for this. I pray that God blesses your family and that he can forgive me, though I do not deserve it. I made a life-changing mistake, and you are within your rights to hate my guts. Again, I am very sorry for this.

/s/ Jeffory Turner

¶8.    On February 11, 2016, Turner was indicted on one count of child exploitation. At trial, Detective Rushing and Turner testified. A unanimous jury found Turner guilty as charged. Finding no error, we affirm.

**DISCUSSION**

¶9.    Turner was found guilty of violating Mississippi Code Annotated section 97-5-33(6), which states: "No person shall, by any means including computer, knowingly entice, induce, persuade, seduce, solicit, advise, coerce, or order a child to meet with the defendant or any other person for the purpose of engaging in sexually explicit conduct." On appeal, Turner argues that the trial court erred in refusing his proposed jury instruction on entrapment and that his counsel was not constitutionally effective.

5

## 1. Entrapment

¶10.    At trial, Turner requested two instructions, D-2, a mistake-of-fact instruction, and D-3, an entrapment instruction. The State objected to both instructions.   After taking the objections under consideration, the trial court ultimately concluded that it thought "the true defense is that there [was] a mistake" and refused D-3.   D-3, the proposed entrapment instruction, provided:

> The defendant in this case has asserted the affirmative defense of entrapment. The defendant has the burden of proving this defense by clear and convincing evidence.  This is a lesser standard than proof beyond a reasonable doubt.  The defendant must establish by clear and convincing evidence that:
>
> 1.    The law enforcement officer(s) came up with the idea of committing the crime and not the defendant;
>
> 2.    The law enforcement officer(s) encouraged the defendant to commit the crime; and
>
> 3.    The defendant was not inclined to commit the crime until the law enforcement officer(s) [induced/encouraged] the defendant to commit the crime.  If the defendant has proved by clear and convincing evidence the above listed facts, then you must find the defendant not guilty of Child Exploitation.

¶11.    This court reviews the decision to give or refuse jury instructions for abuse of discretion.  *McKeithan v. State*, 233 So. 3d 318, 324 (¶23) (Miss. Ct. App. 2018).

> Jury instructions must be read as a whole to determine if the instructions were proper.  Jury instructions must fairly announce the law of the case and not create an injustice against the defendant. . . .  In other words, if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results.

*Id*. (quoting *Davis v. State*, 18 So. 3d 842, 847 (¶14) (Miss. 2009)).

6

¶12. Mississippi's law on entrapment is well-settled:

> Entrapment has been defined as "the act of inducing or leading a person to commit a crime not originally contemplated by him, for the purpose of trapping him for the offense." The defense of entrapment is affirmative and must be proved by the defendant. If the defendant already possesses the criminal intent, and the request or inducement merely gave the defendant the opportunity to commit what he or she was already predisposed to do, entrapment is not a defense.
>
> . . . .
>
> Before a defendant can raise the defense of entrapment, he or she is required to *show evidence of government inducement* to commit the criminal act and a *lack of predisposition* to engage in the criminal act prior to contact with government agents.

*Walls v. State*, 672 So. 2d 1227, 1230 (Miss. 1996) (emphasis added) (quoting *Hopson v. State*, 625 So. 2d 395, 399-400 (Miss. 1993)).

¶13. At the outset, the trial court noted Turner did not pre-file his proposed jury instructions. Rule 3.07 of the Uniform Circuit and County Court Rules, provides in relevant part:

> At least twenty-four hours prior to trial each of the attorneys must number and file the attorney's jury instructions with the clerk, serving all other attorneys with copies of the instructions. Except for good cause shown, the court will not entertain a request for additional instruction or instructions, which have not been pre-filed.

Nevertheless, the trial court held that a prima facie case to warrant an entrapment instruction was not made. We agree.

¶14. The record indicates that Turner was told, and he admitted knowing, that the individual with whom he was conversing described himself to be fifteen years of age. Turner

7

maintained that he believed that he was conversing with an adult. In his letter to the fictitious father, he explained "how people lie about their age on Craigslist[,] but that does not matter now." Turner also testified that Craigslist requires users to certify they are at least eighteen years of age to be on the personals section; this was acknowledged by Detective Rushing during his testimony. Turner also testified that when "Timothy" stated he was "skipping classes," it sounded like a phrase a college-aged person uses. Turner also testified that he thought this was a "role playing fantasy."

¶15. While the record supports the mistake-of-fact instruction, we find nothing in the record that supports Turner's claim for an entrapment instruction. At trial, Detective Rushing explained his training in engaging and identifying child exploitation, and his particular strategy in this case. Rushing indicated that he "goes silent" several times during the conversation to give Turner "thinking time" so "they can really think about what they're going to be doing or what they're thinking about doing." Rushing identified four "exit opportunities" he employed in this particular situation, including stating he was going to shower, spacing answers to give Turner time to think, and mentioning several times that he was fifteen years old. Despite this, Turner persisted. Furthermore, during questioning, when asked if it did not make a difference to Turner if "Timothy" was fifteen or fifty in pursuing the sexual act, Turner replied "Yep."

¶16. Turner makes much of the fact that, although he has solicited sexual favors online before, he has never propositioned a child before; or downloaded child pornography; and,

8

as a bus driver, has never had inappropriate contact with children. Furthermore, he points out that he felt "vindicated" when there was in fact no Timothy. We find Turner's reasoning unpersuasive.

¶17.    Turner admitted having the explicit conversation with whom he believed to be Timothy. The transcripts depict several instances where he was notified he was conversing with a child, and yet he persisted. We also find no evidence of coercion by the police, nor any pressure tactics used during the course of the investigation. The record supports the trial court's refusal of the entrapment instruction. *See generally U.S. v. Orr*, 622 F.3d 864 (7th Cir. 2010), *cert. denied*, 563 U.S. 981 (2011).

¶18.    Finally, Mississippi Code Annotated section 97-5-33(8) specifically states:

> [t]he fact that an undercover operative or *law enforcement officer posed as a child* or was involved in any other manner in the detection and investigation of an offense under this section *shall not constitute a defense* to a prosecution under this section.

(Emphasis added). Turner argues that this does not preclude the entrapment defense. While, it does not explicitly state the "entrapment" defense, the word "defense" is clearly used in the statute and can be read in a broader context, inclusive of the entrapment defense. Nonetheless, we need not discuss this further, in light of the fact that we agree with the trial court that Turner failed to show a prima facie case in support of his entrapment defense. Therefore, we find that trial court did not abuse its discretion in refusing to give the entrapment instruction.

       2.       **Ineffective Assistance of Counsel**

9

¶19. Mississippi Rule of Appellate Procedure 22(b) addresses the propriety of raising the issue of ineffective assistance of counsel on direct appeal:

> Issues which may be raised in post-conviction proceedings may also be raised on direct appeal if such issues are based on facts fully apparent from the record. Where the appellant is represented by counsel who did not represent the appellant at trial, the failure to raise such issues on direct appeal shall constitute a waiver barring consideration of the issues in post-conviction proceedings.

Further, the Mississippi Supreme Court has stated:

> It is unusual for this court to consider a claim of ineffective assistance of counsel when the claim is made on direct appeal. This is because we are limited to the trial court record in our review of the claim[,] and there is usually insufficient evidence within the record to evaluate the claim . . . . [W]here the record cannot support an ineffective assistance of counsel claim on direct appeal, the appropriate conclusion is to deny relief, preserving the defendant's right to argue the same issue through a petition for post-conviction relief. This Court will rule on the merits on the rare occasions where (1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.

*Wilcher v. State*, 863 So. 2d 776, 825 (¶171) (Miss. 2003) (citations and internal quotation marks omitted). The record does not affirmatively indicate that Turner suffered denial of effective assistance of counsel of constitutional dimensions. Nor have the parties stipulated that the record was adequate to allow the appellate court to make a finding without considering the findings of fact by the trial judge. As a result, we decline to address this issue without prejudice to Turner's right to seek post-conviction relief if he chooses to do so.

¶20. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**